Therese SORENSON and the Heirs and Next of Kin of John Sorenson by their trustee, Kevin Sorenson, Respondents,

v.

ST. PAUL RAMSEY MEDICAL CENTER, et al., Petitioners, Rebecca Brick, Certified Nurse Midwife, possibly known as B. Birch, Petitioner, Dr. Gordon M. Ditmanson, et al., Petitioners, Appellants,

Dr. John Doe, et al., Defendants.

No. CX–89–504.

Supreme Court of Minnesota.

June 15, 1990.

Rehearing Denied July 17, 1990.

Clarance E. Hagglund, Britton D. Weimer, Hagglund Law Firm, P.A., Minneapolis, for Rebecca Brick, et al.

Michael F. Barg, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, for Dr. Ditmanson, et al.

Pat J. Skoglund, Thomas M. Countryman, Jardine, Logan & O'Brien, St. Paul, for St. Paul Ramsey Medical Center, et al.

William E. Jepsen, Karon, Jepsen & Daly, P.A., St. Paul, for respondent.

YETKA, Justice.

Respondents brought a medical negligence action in connection with the stillbirth of John Sorenson on September 7, 1984. The trial court granted the defendant's "summary judgment"[1] motion on the grounds that plaintiffs had failed to set out, with the degree of specificity required by Minn.Stat. § 145.682, subd. 4 (1988), the proposed testimony of their expert witness. The court of appeals reversed, and the defendants appealed to this court. We affirm the court of appeals.

Plaintiff, Mrs. Sorenson, became aware that she had a possible claim for medical negligence in 1986 following a conversation with her gynecologist. Mrs. Sorenson's counsel undertook to represent her in August of 1986, approximately 1 month before the applicable statute of limitations was to expire.[2] Plaintiffs' counsel commenced the action against various named and unnamed defendants in September of 1986. Attached to the summons and complaint served on defendants, Dr. Ditmanson, Dr. Koszalka and St. Paul Ramsey Medical Center, was an affidavit of plaintiffs' counsel indicating that he was unable to obtain expert review prior to the expiration of the statute of limitations and explaining that he believed that he could obtain the required affidavit. This affidavit

---

1. For purposes of clarification, we note at the outset that we agree with the court of appeals' conclusion that this was a statutory dismissal for procedural reasons and not a summary judgment. *See Sorenson v. St. Paul Ramsey Medical Center,* 444 N.W.2d 848, 851–52 (Minn.App. 1989); *see also Thorson v. Rice County Dist. One Hosp.,* 437 N.W.2d 410, 413–14 (Minn.1989).

2. The 2–year period provided by Minn.Stat. § 541.07(1) (1988) runs from the date when medical treatment terminates. *Johnson v. Winthrop Laboratories Div. of Sterling Drug, Inc.,* 291 Minn. 145, 148, 190 N.W.2d 77, 79 (1971).

satisfied the initial requirement of Minn. Stat. § 145.682, subd. (3)(b).

In November 1986, counsel for defendants, Drs. Ditmanson and Koszalka, served their answer to the complaint with interrogatories requesting, *inter alia,* a "specific and detailed description of all facts upon which you base your allegation [of medical negligence]." In December 1986, plaintiffs' attorney served a second affidavit on Drs. Ditmanson and Koszalka. This second affidavit identified Dr. Peter Watson of Portland, Oregon, as a board certified specialist in obstetrics and gynecology and the person who would testify as plaintiffs' expert. This second affidavit was served within the time limit required by Minn.Stat. § 145.682.

On February 6, 1987, counsel for Drs. Ditmanson and Koszalka moved the trial court for an order compelling plaintiffs to answer defendants' interrogatories and produce the documents requested therein. On February 6, 1987, plaintiffs' counsel provided defendants with a supplemental affidavit providing more detail as to the substance of Dr. Watson's expert testimony. Following plaintiffs' service on February 23, 1987, of answers to the interrogatories of St. Paul Ramsey Medical Center and its resident obstetrician, Drs. Ditmanson and Koszalka withdrew their pending motion to compel discovery and waited out the 180 days before moving for "summary judgment."

The issue in this case is whether Minn. Stat. § 145.682 (1988) is satisfied by a minimal outline of the facts and opinions and a general summary of the grounds for the opinions to which the respondents' expert is expected to testify.

A trial court's dismissal of an action for procedural irregularities will be reversed on appeal only if it is shown that the trial court abused its discretion. *Dennie v. Metropolitan Medical Center,* 387 N.W.2d 401, 404 (Minn.1986). Statutory construction, however, is a question of law and subject to de novo review on appeal. *Doe v. Minnesota State Bd. of Medical Examiners,* 435 N.W.2d 45, 48 (Minn.1989).

The statute in question, Minn.Stat. § 145.682, was passed in 1986 as part of an overall attempt at tort reform in Minnesota. *See* Act of Mar. 25, 1986, ch. 455, § 60, 1986 Minn.Laws 840, 871–72. This court has not previously addressed the issue of the substantive disclosure requirements of section 145.682. Section 145.682 basically requires the plaintiff's attorney to provide two affidavits disclosing information in connection with expert testimony regarding the alleged medical negligence. *See* Minn. Stat. § 145.682, subd. 2. The first affidavit need not identify the expert or provide the details of the expert's opinion. *See* Minn. Stat. § 145.682, subd. 2(1). The second affidavit, however, must identify the expert and disclose something about the substance of the facts and opinions regarding the alleged negligence and a summary of the grounds for each opinion. *See* Minn.Stat. § 145.682 subd. 2(2).

This case concerns the second affidavit. Although plaintiffs' attorney provided some disclosure within the applicable time frame, defendants contend that plaintiffs' second affidavit did not provide sufficient detail to satisfy the substantive disclosure requirements of Minn.Stat. § 145.682, subd. 4. Section 145.682, subdivision 4[3] contains three basic disclosure require-

---

**3.** Minn.Stat. § 145.682, subd. 4 (1988) provides as follows:

**Identification of experts to be called.** The affidavit required by subdivision 2, clause (2), must be by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivi-

sion satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and served upon the defendant within 180 days after commencement of the suit against the defendant.

The parties or the court for good cause shown, may by agreement, provide for extensions of the time limits specified in subdivision 2, 3, or this subdivision. Nothing in this subdivision may be construed to prevent either party from calling additional expert witnesses or substituting other expert witnesses.

ments: the identity of the expert, the substance of the facts and opinion about which the expert will testify, and a summary of the grounds for each opinion. It is undisputed that plaintiffs' attorney adequately identified the expert. Consequently, the issue in this case is whether the affidavits and answers to interrogatories in question contained sufficient details concerning "the substance of the facts and opinions" and a sufficiently precise "summary" of the grounds for each opinion.

■ The pertinent legislative history is of little help in determining the legislative intent other than to indicate that the legislature contemplated procedural reform directed at the elimination of "frivolous" cases. In order to prove medical negligence, a plaintiff usually must offer expert testimony with respect to the standard of care and establish that the defendant doctor departed from that standard. *E.g. Silver v. Redleaf*, 292 Minn. 463, 465, 194 N.W.2d 271, 272 (1972). There are, however, exceptional cases in which expert testimony is not necessary. In these rare cases, if plaintiff raises the issue, the trial court should make a finding that expert testimony is not necessary and, therefore, the statute is inapplicable. *See Chizmadia v. Smiley's Point Clinic*, 873 F.2d 1163 (8th Cir.1989) (remanding action for determination of whether expert testimony was necessary).

■ In this case, it is obvious that expert testimony is required, and plaintiffs made no claim to the contrary. Consequently, there is no need for a finding by the trial court here. It follows that, ordinarily, a malpractice action without supporting expert testimony is frivolous *per se.* The procedural dismissal mandated by section 145.682, subdivision 6 seems, therefore, to have been designed to deal only with cases completely unsupported by expert testimony. Accordingly, the most important disclosure of the affidavit required by section 145.682, subdivision 4 (the second affidavit) is the *identity* of an expert who is willing to testify as to the alleged negligence.[4]

■ Drs. Ditmanson and Koszalka argue that the substantive disclosure requirements of Minn.Stat. § 145.682, subd. 4 are identical to Minn.R.Civ.P. 26.02. This is a compelling argument because the pertinent language of Rule 26.02(d)(1)(A) is identical to the disclosure requirement language in Minn.Stat. § 145.682, subd. 4. Minn.R. Civ.P. 26.02(d)(1)(A) states:

A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, *and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.* (B) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to Rule 26.02(d)(3), concerning fees and expenses, as the court may deem appropriate.

(Emphasis added.) In commenting on Rule 26.02(d), Professors Herr and Haydock state: "Rule 26 * * * *fails to provide standards regarding the sufficiency of interrogatory answers* and neglects to provide courts with any guidance to decide when additional discovery should be permitted." 2 D. Herr & R. Haydock, *Minnesota Practice*, § 26.19 at 27 (2d ed. 1985) (emphasis added).

In summary, Drs. Ditmanson and Koszalka argue that Rule 26.02(d) requires a "detailed disclosure," that Minn.Stat. § 145.682 uses the same language, and that, therefore, Minn.Stat. § 145.682 requires a detailed disclosure. This reasoning is flawed because there is no authority for the proposition that Rule 26.02(d) actually requires a "detailed disclosure." The "substance" and "summary" language of both the rule and the statute suggest a more general disclosure requirement.

The case of *Dennie v. Metropolitan Medical Center*, 387 N.W.2d 401 (Minn.

---

**4.** This conclusion is supported in part by the fact that subdivision 4 is entitled "Identification of experts to be called."

1986), although decided before section 145.-682 was effective, is somewhat analogous to the present case. In *Dennie*, this court concluded that the trial court abused its discretion in suppressing the testimony of plaintiff's experts in a medical malpractice suit resulting in a dismissal against plaintiff. *Id.* at 407. In *Dennie*, the defendant's interrogatories with respect to expert testimony asked plaintiff to state "in complete detail: (a) any specific acts [of negligence]" and "(b) [w]hat the defendant either should or should not have done under the circumstances." Plaintiff answered:

> a. The injection was given negligently by one of the agents or employees of defendant.
> b. The defendant should have given the injection in the proper manner.

*Dennie*, 387 N.W.2d at 403. In concluding that the trial court abused its discretion, this court emphasized that the primary objective of the law is to dispose of cases on the merits. *Id.* at 404 (quoting *Firoved v. General Motors Corp.*, 277 Minn. 278, 283–84, 152 N.W.2d 364, 368 (1967)).[5]

The present case involves an allegation of failure to diagnose and properly treat the condition known as *placentio abruptio*.[6] In the final supplemental affidavit, plaintiffs' counsel states:

> [Upon admission to the hospital, Mrs. Sorenson had] a history of eight hours of persistent abdominal pain * * *. There was [sic] obvious symptoms of fetal distress and probable abruptial placenta that should have been identified by nurse-midwife Birch and Dr. Bezidicek

[sic]. Each of them failed to properly evaluate Theresa [sic] Sorenson's condition and failed to properly care and treat Theresa [sic] Sorenson thereafter. Shortly thereafter, it should have been apparent that the contractions were abnormal and that the fetal heart rate was abnormal and that there should have been timely intervention by a physician but there was not. At some point in time between 12:25 p.m. and 1:40 p.m., the plaintiff was also examined by either Dr. Ditmanson or Dr. Koszalka while there were still viable heart tones for John Sorenson, and they failed to properly diagnose an abruptial placenta and fetal distress and failed to take proper steps to deliver John Sorenson prior to his death.

In plaintiffs' answer to another of defendants' interrogatories, plaintiffs state that their expert will rely on the "medical history and records of Therese Sorenson and * * * John Sorenson" as the "substance" of the facts on which plaintiffs' expert is expected to testify and as the "substance" of the opinion to which plaintiffs' expert will testify.

■ The purpose of expert testimony is to interpret the facts and connect the facts to conduct which constitutes malpractice and causation. Thus, to satisfy the requirements of the second affidavit, it is not enough simply to repeat the facts in the hospital or clinic record. The affidavit should set out how the expert will use those facts to arrive at opinions of malpractice and causation. To state, as was done in this case, that the expert will testify that the defendants "failed to properly evalu-

---

5. In the present case, the court of appeals also properly emphasized the importance of deciding cases on their merits. *Sorenson v. St. Paul Ramsey Medical Center*, 444 N.W.2d 848, 854 (Minn.App.1989) (citing *Firoved* and *Dennie*).

6. *Placentio abruptio*, apparently also known as placental abruption, is the premature separation of the placenta from the implantation site. 4C R. Gray, *Attorney's Textbook of Medicine* ¶ 305.51 at 305–43 (3d ed. 1989). The exact causes of placental abruption are unknown. *Id.* ¶ 305.51 at 305–44. There are five basic indicators of severe placental abruption: vaginal bleeding, uterine tenderness, absence of fetal heart tones, hypertonicity of the uterus and hy-

povolemia. *Id.* ¶ 305.51 at 305–46. This condition is difficult to diagnose. *See id.* "[E]ven in severe cases * * * it is only when there is extensive bleeding or pain, or the condition forces delivery of the abnormal placental organ that the condition will be identified." *Id.* "Often the diagnosis will have to be made on the basis of the exclusion of other possibilities by sonographic and clinical examination because it is so difficult to identify by itself." *Id.* With respect to treatment, "[i]f cesarean section is not accomplished immediately, the fetus must be monitored carefully for signs of distress and the facilities for cesarean section should be on hand, ready for use, if necessary." *Id.* ¶ 305.51 at 305–47.

ate" and "failed to properly diagnose" is not enough. These are empty conclusions which, unless shown how they follow from the facts, can mask a frivolous claim.

The affidavits and answers to interrogatories in the present case are markedly more detailed than the answers in *Dennie*. Even so, they do little more than refer generally to the hospital records and then, without making any connection, conclude that there was causal malpractice. We believe, however, that dismissal of the lawsuit is not appropriate here because of the unique procedural circumstances of the case.

■ Following plaintiffs' service on February 23, 1987, of answers to interrogatories of St. Paul Ramsey Medical Center and a resident obstetrician, Drs. Ditmanson and Koszalka withdrew their pending motion for answers to their own similar interrogatories relative to the plaintiffs' expert testimony. While the affidavits and answers to interrogatories appear to fall short of the requirements of Minn.Stat. § 145.682, subd. 4 (1988), we believe that plaintiffs were entitled to understand that, by withdrawing their pending motion to compel answers to interrogatories, the defendant doctors were signifying their acceptance of plaintiffs' answers in satisfaction of the requirements of section 145.682. Plaintiffs reasonably relied on this conduct. As a result, defendants should be estopped from seeking a procedural dismissal pursuant to section 145.682. *See Thorson v. Rice County Dist. One Hospital,* 437 N.W.2d 410, 416 (Minn.1989). This is not to say, however, that the defendants are foreclosed from complaining thereafter of the inadequacy of plaintiffs' answers to interrogatories or from seeking an order compelling discovery or imposing sanctions pursuant to the Minnesota Rules of Civil Procedure. It is simply to recognize that the sanction imposed by section 145.682 is the abrupt termination with prejudice of what may be a meritorious cause of action, a sanction in sharp contrast with the judiciary's traditional preference for the disposition of claims on their merits and a corresponding reluctance to require the parties to run a technical obstacle course. While the sanctions provided by the Minnesota Rules of Civil Procedure, on the other hand, are more forgiving and tolerant of error, both statute and rule are intended to provide an avenue for discovery of the evidentiary basis for the action.

■ In cases commencing after this opinion is filed, however, we will expect a more complete disclosure. In this case, there was no valid reason why plaintiffs could not have given opposing counsel a much more detailed summary of their expert's expected testimony. In future cases, plaintiffs will be expected to set forth, by affidavit or answers to interrogatories, specific details concerning their experts' expected testimony, including the applicable standard of care, the acts or omissions that plaintiffs allege violated the standard of care and an outline of the chain of causation that allegedly resulted in damage to them.

■ In deciding whether a procedural dismissal should be granted, the trial court should carefully evaluate the degree of prejudice to the defendant caused by the inadequate disclosures. *See Dennie,* 387 N.W.2d at 406. In borderline cases where counsel for a plaintiff identifies the experts who will testify and give some meaningful disclosure of what the testimony will be, there may be less drastic alternatives to a procedural dismissal. In these instances, the court may authorize a deposition of the expert at the plaintiff's expense or limit the expert's testimony to those matters adequately disclosed. *See Dennie,* 387 N.W.2d at 406, 408 (Simonett, J., concurring). These measures would encourage full disclosure and eliminate the prejudice suffered by a defendant as a result of an inadequate disclosure. Finally, as noted by the court of appeals, a conclusion that section 145.682 is satisfied does not rule out the possibility of a subsequent grant of summary judgment.

Affirmed as modified.

KELLEY, J., took no part in the consideration or decision of this matter.