Arleen C. HEMPEL as Trustee for the Heirs of Bruce R. Hempel, et al., Appellants,

v.

FAIRVIEW HOSPITALS AND HEALTH-CARE SERVICES, INC., d/b/a Fairview Riverside Hospital, d/b/a Riverside Medical Center, Respondent.

No. C1-93-248.

Court of Appeals of Minnesota.

Aug. 3, 1993.

Steven C. Thal, Steven C. Thal, P.A., St. Louis Park, for appellants.

John M. Degnan, Nancy Lee Nelson, Kathryn Davis, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and HUSPENI and HARTEN, JJ.

## OPINION

DAVIES, Judge.

The parents of a psychiatric patient who died when he suffered cardiac arrest during a psychiatric "take-down" procedure appeal the dismissal of their medical malpractice action; the district court dismissed the action on the basis that the affidavits of experts offered to satisfy Minn.Stat. § 145.682 (1990) were inadequate. The parents also appeal the district court's grant of summary judgment on their claims of negligent and intentional infliction of emotional distress. We affirm in part, reverse in part, and remand the malpractice claim.

## FACTS

Thirty-year-old Bruce Hempel had a ten-year history of psychiatric disorders, including schizophrenia. On December 10, 1989, Hempel, accompanied by his parents, voluntarily checked into the Fairview Riverside Hospital ("Riverside") psychiatric unit. During the admission procedure, when Riverside staff would not allow him to smoke, Hempel, who weighed 300 pounds, became upset and announced he was leaving.

Riverside staff called a team of psychiatric attendants who, to control Hempel's behavior and avert any danger to staff or others, conducted a "take-down" procedure. In the process, Hempel's sweatshirt was pulled up over his head and he was held face down to the floor by approximate-

ly eight attendants. During the take-down, Hempel suffered cardiac arrest and died.

Hempel's parents ("the Hempels") contend they heard him apologize and ask for help during the take-down. They tried to assist him, but were restrained by Riverside staff and eventually were forced to leave the room.

An autopsy revealed no specific trauma or cause of the cardiac arrest. A cardiological autopsy, performed by a cardiology specialist, revealed that Hempel had a 60 percent narrowing of the right coronary artery, a condition that increases the risk of sudden death by cardiac arrest.

The Hempels brought an action against Riverside alleging medical malpractice, assault, battery, false imprisonment, and intentional and negligent infliction of emotional distress. To satisfy the medical malpractice affidavit requirement of Minn.Stat. § 145.682 (Supp.1991), the Hempels filed the affidavits of John McCullough, a psychiatric assistant, and Dr. Garry Peterson, the medical examiner who signed the death certificate.

Riverside moved for dismissal of the medical malpractice claim, contending the affidavits did not satisfy the statute, and for summary judgment on the other claims. The district court granted Riverside's motion in all respects. It found that: McCullough was unqualified as an expert; the affidavits failed to establish causation; the assault, battery, and false imprisonment claims did not survive Bruce Hempel's death; and the Hempels' allegations did not support their emotional distress claims.

The Hempels appeal the dismissal of their malpractice and emotional distress claims.

## ISSUES

I. Did the experts' affidavits satisfy Minn.Stat. § 145.682, subd. 2(2) (1990)?

II. Did the district court err in granting summary judgment on the negligent infliction of emotional distress claim?

III. Did the district court err in granting summary judgment on the intentional infliction of emotional distress claim?

## ANALYSIS

### I.

■ Within 180 days of commencing a medical malpractice action, the plaintiff must serve upon the defendant an affidavit stating the identity of experts to be called at trial, and

the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

Minn.Stat. § 145.682, subds. 2(2), 4 (1990). Properly filed answers to interrogatories may be substituted for the affidavit. Minn.Stat. § 145.682, subd. 4. Failure to comply with the statute requires mandatory dismissal with prejudice. Minn.Stat. § 145.682, subd. 6 (1990). A trial court's dismissal of an action under section 145.682 will not be reversed absent an abuse of discretion. *Sorenson v. St. Paul Ramsey Medical Ctr.*, 457 N.W.2d 188, 190 (Minn. 1990).

■ Section 145.682, subdivision 2(2), has been interpreted as requiring plaintiffs to provide fairly detailed information about their experts' expected testimony. The affidavits must set out the standard of care, the acts allegedly violating that standard, and an outline of the chain of causation. *Sorenson*, 457 N.W.2d at 193. The affidavit is expected to set out how the expert will use the facts of the case to arrive at an opinion of malpractice and causation. *Id.* at 192.

■ The exclusion of expert testimony lies within the trial court's broad discretion. *Benson v. Northern Gopher Enterprises*, 455 N.W.2d 444, 445–46 (Minn.1990); *Reinhardt v. Colton*, 337 N.W.2d 88, 93 (Minn. 1983). We will reverse the trial court's ruling only where it is based on an erroneous view of the law or constitutes an abuse of discretion. *Benson*, 455 N.W.2d at 445–46; *Reinhardt*, 337 N.W.2d at 93.

■ The district court first concluded that expert John McCullough, the psychiatric assistant who testified about the standard of care and breach of that standard, was unqualified. To qualify as an expert in a medical malpractice case, a person must have sufficient scientific and practical experience with the subject matter of the offered testimony. *Cornfeldt v. Tongen,* 262 N.W.2d 684, 693 (Minn.1977). Lack of a license to practice medicine does not preclude expert status in a medical malpractice action if the expert is otherwise competent to testify under the above standard. *Id.* at 696–97.

The court disqualified McCullough because

> he lacks basic educational and professional training, as well as the practical knowledge of how employees of psychiatric facilities customarily behave when confronted with circumstances similar to those faced by this defendant.

It further found that McCullough

> has no medical background with which to buttress his contention that more effective monitoring of Bruce Hempel during the take-down procedure was either required to meet a standard, or that the procedure followed by defendant's agents represents a departure from that standard.

McCullough has a B.A. in psychology, currently works in the health care field, has conducted and trained others to conduct take-down procedures, and has worked as a psychiatric assistant at Metropolitan Medical Center. In his affidavit, McCullough concluded that Riverside deviated from the standard of care for monitoring patients during and after take-down procedures by failing to "communicate with the patient" and by failing to "provide assurance to the patient through a team leader." He also concluded that placing Bruce Hempel's sweatshirt over his head during the take-down was a deviation from the standard of care.

■ We find the district court abused its discretion in ruling that McCullough was not qualified as an expert. Doctors typically provide expert testimony in medical malpractice actions because the allegedly negligent actions usually are those of other doctors or of persons working under the direct supervision of doctors. In this case, no doctors were involved in the take-down procedure. Likely, few doctors would have the required experience to testify as an expert on take-down procedures.

McCullough, however, has the necessary professional training and experience to testify about how a take-down procedure should be conducted and whether Riverside staff deviated from that standard. Further, his affidavit provided a specific opinion about how Riverside violated the standard of care. *See Sorenson,* 457 N.W.2d at 192–93 (affidavits expressing empty conclusions about defendant's violation of the standard of care are insufficient under section 145.682, subdivision 2(2)).

Although the district court was concerned about McCullough's lack of "medical background" to support his testimony, a more extensive medical background is unnecessary because McCullough's testimony is not intended to establish a medical link between breach of the standard of care and injuries. McCullough's testimony is offered only to establish the standard of care for the procedure itself, and breach of that standard.

To establish medical causation the Hempels offered the affidavit of Dr. Garry Peterson, the Hennepin County Medical Examiner who signed the death certificate. The district court concluded, however, that the affidavit of Dr. Peterson failed to establish a causal connection between Riverside's allegedly negligent acts and Bruce Hempel's death.

> Dr. Peterson stated in his affidavit
>
> > there is no way to prove what actually caused the heart to stop. However, it is my opinion that the sequence of events, including the restraint itself, was a participating factor in bringing about the cardiac arrest.

The district court concluded that this affidavit failed to establish the "chain of causation" required by *Sorenson* because it

states only that "the take-down procedure was part of a scenario that ended" in Bruce Hempel's death, not that it was a cause.

The Hempels face a difficult situation. Because of the nature of the allegedly negligent actions possibly leading to their son's death, they have little choice but to offer affidavits from two different experts to satisfy the entirety of section 145.682. Here, one expert must testify that the procedure was negligently performed, essentially a task for a technician like McCullough, not a doctor. The second expert must testify that the negligence resulted in the complained-of injury, a task for a doctor. Constructing a bridge between the two experts, thus establishing the required "chain of causation," is a complex task, given the limited interaction between the two experts at this point in the litigation. *See Sorenson,* 457 N.W.2d at 193.

In a situation like this, where two experts are required, section 145.682 does not provide extensive opportunity for a medical expert to gain all the information necessary to offer a substantial opinion on causation. Until the medical expert has had an opportunity to hear the entire story, an opinion on causation is bound to be somewhat indefinite.

■ The purpose of section 145.682 is not to deprive plaintiffs of legitimate lawsuits, but to weed out actions without evidentiary support. We find that the experts' affidavits offered by the Hempels in combination establish that their lawsuit has evidentiary support; the district court abused its discretion in ruling to the contrary. Dr. Peterson's opinion that the restraint was a "participating" factor in cardiac arrest, combined with McCullough's testimony regarding standard of care and breach, satisfy the statute's purpose of ensuring the legitimacy of this lawsuit.

## II.

■ The Hempels next contend that the district court erred in granting summary judgment on their negligent infliction of emotional distress claim. This court may reverse a summary judgment determination only if there is a genuine issue of material fact or if the district court erroneously applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

■ To recover for negligent infliction of emotional distress, a plaintiff must either have suffered a contemporaneous physical injury or must have been within the "zone of danger" *and* suffered physical symptoms subsequent to and because of the resulting emotional disturbance. *Leaon v. Washington County,* 397 N.W.2d 867, 875 (Minn.1986); *Quill v. Trans World Airlines, Inc.,* 361 N.W.2d 438, 442–43 (Minn.App.1985), *pet. for rev. denied* (Minn. April 18, 1985).

■ Although the Hempels claim they were physically restrained from assisting their son during the take-down procedure, neither alleges that they suffered a compensable physical injury as a result of the procedure. Further, there is no evidence that either of the Hempels were in the "zone of danger" of physical injury. The district court did not err in granting summary judgment on the negligent infliction of emotional distress claim.

## III.

■ To recover for the tort of intentional infliction of emotional distress, a plaintiff must show that (1) the conduct allegedly causing the distress was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 438–39 (Minn.1983). To qualify as extreme or outrageous, the conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Haagenson v. National Farmers Union Prop. & Casualty Co.,* 277 N.W.2d 648, 652 n. 3 (Minn.1979). Proof of physical injury is not a requirement to recover for intentional infliction of emotional distress, *Dornfeld v. Oberg,* 503 N.W.2d 115 (Minn.1993), but a showing of physical injury generally serves as evidence of severe

emotional distress. *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 290 (Minn.1992).

The Hempels contend that it was extreme and outrageous to be placed in a situation where they witnessed their son's death, watching him being held down after he apologized for his conduct. There is no real debate that the take-down procedure itself was necessary and could be conducted safely. The Hempels point to only two aspects of the procedure as being unusual: that Bruce Hempel's sweatshirt was pulled over his head, and that he was not provided with a "team leader" and appropriate reassurance during the procedure. These deficiencies in the procedure do not qualify as behavior "utterly intolerable to the civilized community."

There is no doubt that witnessing a son's death in this manner is distressing. But the threshold for finding severe emotional distress is high. *See Hubbard*, 330 N.W.2d at 439. The district court did not err in granting summary judgment on this claim.

## DECISION

The district court abused its discretion in ruling that the experts' affidavits did not satisfy the requirements of Minn.Stat. § 145.682 (1990). The district court did not err in granting summary judgment on the negligent and intentional infliction of emotional distress claims.

**Affirmed in part, reversed in part, and remanded.**

HARTEN, Judge (concurring in part, dissenting in part).

I respectfully dissent because appellants' affidavits fail to provide the crucial medical link between the act and the result.

On the causation issue, appellants offered the affidavit of Dr. Peterson, the Hennepin County Medical Examiner, who signed the death certificate. Dr. Peterson stated:

> There is no way to prove what actually caused the heart to stop. However, it is my opinion that the *sequence of events,* including the restraint itself, was a *participating factor* in bringing about the cardiac arrest.

(Emphasis added.)

In *Luebner v. Sterner,* 493 N.W.2d 119, 121 (Minn.1992), the supreme court reaffirmed the causation standard necessary to state a prima facie medical malpractice case, to-wit, the "more probable than not" standard. Appellants have presented no expert affidavit opining that the take-down procedure more probably than not caused Bruce Hempel's death. Dr. Peterson's affidavit stated that the sequence of events including the take-down was a "participating factor" in the death. The extent to which the sequence of events (of which the take-down was but a part) participated in Bruce Hempel's death remains vague and unknown. There are no specific causation details as required by the supreme court in *Sorenson v. St. Paul Ramsey Medical Ctr.,* 457 N.W.2d 188, 192–93 (Minn.1990). Whereas I join the court's opinion in all other respects, the causation deficiency is dispositive and compels affirmance of the trial court's dismissal.