**John M. MORIARTY, Appellant,**

v.

**MINNEAPOLIS EMPLOYEES RETIREMENT BOARD, Respondent.**

No. C7–93–2182.

Court of Appeals of Minnesota.

May 17, 1994.

Frederick E. Finch, Bradley J. Betlach, Minneapolis, for appellant.

Donald C. Willeke, John H. Daniels, Jr., Minneapolis, for respondent.

Considered and decided by HUSPENI, P.J., and PARKER and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant contends that the trial court erroneously interpreted the statute governing the Minneapolis Employees Retirement Fund when it dismissed appellant's claim to change his election of disability benefits. The specific language of appellant's retirement benefit agreement, the applicable statute, and Minnesota case law prohibit a retiree from changing the terms of the retirement allowance once retirement has begun. We affirm.

## FACTS

This case proceeded to trial on stipulated facts. Appellant John Moriarty was a police officer with the Metropolitan Airports Commission (MAC) and a participant in the Minneapolis Employees Retirement Fund (MERF). As a result of a serious head injury, appellant was no longer able to work for MAC and applied for a medical disability leave. Appellant completed an "Application for Retirement Annuity and Election of Retirement Option" which contained the following provision:

I hereby make application for a retirement annuity pursuant to provisions of Minnesota Statutes 422A and certify that I have secured an explanation of the various option selections, and that I of my own free will and judgment elect the following option *with the understanding that such option cannot be changed after the effective date of retirement.*

(Emphasis in original.) Of the various options available, appellant selected Option II which would reduce appellant's monthly retirement benefit during his life so that, upon his death, a named beneficiary would continue to receive the same benefit for his or her lifetime. Appellant designated his wife, Daphne Truesdell Moriarty (Truesdell), as his beneficiary under Option II. Appellant retired in July 1984.

In June 1985, the district court annulled appellant's marriage to Truesdell and awarded the parties "their separate and individual pension and profit sharing plans, free and clear from any interest therein by the other." Appellant sought to guarantee that Truesdell had no interest in his pension by clarifying the judgment and decree that annulled their marriage. In the second amended judgment and decree, the court provided:

Each party is awarded their separate and individual pension and profit sharing plans, free and clear from any interest therein by the other, and, in particular, [John Moriarty] is awarded all rights and interests which may have vested in or accrued to either party in [his] disability retirement annuity payable by the Minneapolis Employees' Retirement Fund, including any interest of [Truesdell] as contingent beneficiary of such annuity, and including any right to change or appoint such contingent beneficiary.

In the years following his annulment, appellant repeatedly requested that MERF allow him to change the beneficiary of his retirement policy from Truesdell to his children, and then to his new wife, Leslie Moriarty. At each juncture, MERF denied the requests. In 1992, appellant brought this action against respondent Minneapolis Employees Retirement Board. By the time he proceeded to trial, appellant was again divorced and sought to change his election of disability benefits to a "single life annuity." After trial, the court dismissed appellant's claims with prejudice based upon its conclusion that appellant's "benefits may be paid consistent with his current wishes, but must be measured by the life of the original beneficiary."

## ISSUE

When a retiree is no longer married to the beneficiary he selected in his public retirement allowance agreement, may he designate a different beneficiary after his retirement has begun?

## ANALYSIS

■ Appellant chose under "option II" to receive less money during his life in order to provide money for a beneficiary after his death. Appellant now seeks to revamp his retirement benefit plan either to pay out as if it were an "option I" policy or to substitute his heirs in place of Daphne Truesdell. Appellant contends the trial court erroneously interpreted the statute governing the Minneapolis Employees Retirement Fund when it refused to allow him to change his election of a beneficiary. ¨We disagree.

We review the trial court's conclusions of law and its interpretation of statutes de novo. *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn.1990). The statutory language governing public retirement allowances provides:

> At retirement, any employee who is eligible to receive a service allowance may elect to receive benefits in a retirement allowance payable throughout life or may on retirement elect to receive the actuarial equivalent at that time of annuity, pension, or retirement allowance in a lesser annuity, or a lesser pension, or a lesser retirement allowance, payable throughout life, with the provisions that:
>
>       *     *     *     *     *     *
>
> Option II. Upon the death of the benefit recipient, the benefit recipient's annuity, pension, or retirement allowance shall be continued throughout the life of and paid to the person as the benefit recipient shall nominate by written designation duly acknowledged and filed with the retirement board as of the date of retirement.

Minn.Stat. § 422A.17 (1992). This statute requires an employee to select a benefit package and beneficiary "at retirement," "on retirement," and "as of the date of retirement." *Id.* Thus, once an employee has selected benefits and has entered retirement,

Minnesota's long-standing precedent prohibits the retiree from changing the terms of the retirement plan. *See State ex rel. LaFond v. City of Minneapolis*, 173 Minn. 589, 594, 218 N.W. 119, 121 (1928). Contrary to appellant's contention, *LaFond* is still good law; the *LaFond* court interpreted and applied the original version of the retirement allowance statute which is virtually identical to our current law. *Compare* 1919 Minn.Laws ch. 522 § 9 *with* Minn.Stat. § 422A.17.

■ *LaFond* involved a man who elected under "option II" to receive less retirement benefits during his lifetime so that his wife would receive benefits after his death. *Id.*, 173 Minn. at 590, 218 N.W. at 119. When his wife predeceased him, however, LaFond asked the retirement board to change his retirement policy to "option I." Before the board addressed LaFond's petition, LaFond died. LaFond's heirs brought an action seeking to change the policy as LaFond had desired. The court denied the request, holding that a pensioner may not "shift at will from one option to another after having made his election upon retirement." *Id.*

We see numerous similarities between appellant's case and *LaFond.* Both men received public retirement benefits. Both men initially selected the "option II" benefit package, entitling a beneficiary to continue to collect benefits after the death of the retiree. Both men also sought to change their benefit options after they had entered retirement. Based upon statutory language which is the same as that in effect today, the court denied LaFond's request. This precedent dictates that, like *LaFond,* appellant cannot change the terms of his retirement allowance once he has retired.

Furthermore, strictly by the terms of the retirement allowance agreement that appellant signed, appellant acknowledged that he could not change the terms of his retirement plan once he retired in April 1984:

> I of my own free will and judgment elect the following option *with the understanding that such option cannot be changed after the effective date of retirement.*

Appellant argues that the court may change the terms of his retirement allowance

under the rationale employed in *Larsen v. Northwestern Nat'l Life Ins. Co.*, 463 N.W.2d 777, 780 (Minn.App.1990), *pet. for rev. denied* (Minn. Feb. 6, 1991). Again, we cannot agree. *Larsen* is distinguishable from the present case on two substantial grounds. First, *Larsen* involved a standard life insurance policy, not a public employees' retirement fund as involved here. *See LaFond*, 173 Minn. at 590, 218 N.W. at 119 (law treats public retirement funds and pensions differently than annuity insurance policies or mutual benefit insurance contracts). Second, the decedent's life insurance policy in *Larsen* allowed the insured to "change his beneficiary at any time by submitting written notice." *Larsen*, 463 N.W.2d at 780. In contrast, appellant's retirement agreement prohibits changing its terms after the effective date of retirement. These material differences make *Larsen* inapposite here.

Finally, appellant contends that the trial court had the power to direct MERF to change the terms of his retirement allowance under Minn.Stat. §§ 518.58, subd. 4, 518.581 (1992). These statutes vest the district court with the authority to divide pension benefits upon dissolution. *Id.* Appellant is asking for more than division of his retirement benefits, however; he has asked the court to change the terms of his retirement agreement despite the explicit language to the contrary in that document and in Minn.Stat. § 422A.17. We cannot read the family law statutes to override the specific law governing public retirement allowances. Had the legislature intended to vest such power in the family court, it would have done so expressly in chapter 422A. Contrary to appellant's interpretation, the family law statutes cannot regulate the management and calculation of public retirement funds.

The trial court here acknowledged the terms of the second amended judgment and decree which divested Daphne Truesdell of any interest in appellant's retirement allowance. The court set out clearly that although Truesdell must be the measuring life under the retirement agreement, appellant's designated heirs or beneficiaries will be the ultimate recipients of any retirement benefits after appellant's death. The court made it

clear that Truesdell will not receive any benefits. These measures should satisfy appellant's requests to the greatest degree possible under these circumstances. Appellant currently receives all that he is legally entitled to receive under the terms of his retirement agreement. That policy, the statute, and *LaFond* specifically prohibit appellant from renegotiating the terms after he entered retirement.

## DECISION

The specific language of appellant's retirement agreement, the statute governing public retirement funds, and judicial precedent set out in *LaFond* prohibit appellant from changing the terms of his retirement allowance now that he has entered retirement. The trial court did not err in its interpretation of the law and its construction of the retirement agreement.

**Affirmed.**