**Ida STROUD, as Trustee for Heirs of Geneva Stroud, Appellant,**

v.

**HENNEPIN COUNTY MEDICAL CENTER, et al., Respondents,**

**Hennepin Faculty Associates, Respondent.**

No. C7–95–2042.

Court of Appeals of Minnesota.

Feb. 27, 1996.

Review Granted April 16, 1996.

Jesse Gant, III, The Gant Law Office, Minneapolis, for Ida Stroud.

Michael O. Freeman, Hennepin County Attorney, Michael B. Miller, Sr. Assistant County Attorney, Minneapolis, for Hennepin County Medical Center, et al.

David D. Alsop, Beverly Babcock Kranz, Gislason, Dosland, Hunter & Malecki, P.L.L.P., Minnetonka, for Hennepin Faculty Associates.

Considered and decided by PARKER, P.J., and SCHUMACHER and DAVIES, JJ.

## OPINION

PARKER, Judge.

The district court dismissed appellant's claims pursuant to Minn.Stat. § 145.682 for failing to comply with the affidavit requirements of that statute. The court also denied appellant's motion for default judgment based on respondents' failure timely to answer appellant's complaint and amended complaint. Appellant challenges both of these actions. We reverse in part, affirm in part, and remand.

## FACTS

Appellant Ida Stroud, as trustee for the heirs of Geneva Stroud, brought a medical malpractice claim against Hennepin County Medical Center (HCMC) and Hennepin Faculty Associates (HFA) for failure timely to diagnose and treat a subarachnoid hemorrhage which, it is alleged, ultimately resulted in the death of appellant's 69–year–old mother, Geneva Stroud. The action was originally commenced on July 27, 1994, when appellant served respondents HCMC and HFA with a summons and complaint.

Along with the original complaint, Stroud served respondents with an affidavit of expert review and an affidavit of expert identification pursuant to Minn.Stat. § 145.682, which requires that such latter affidavits be served within 180 days of the commencement of a medical malpractice suit. In April 1995, more than 180 days after service of the initial complaint, but less than 180 days after service of the amended complaint, appellant served respondents with two additional affidavits of expert identification. The district court eventually dismissed appellant's claims, finding that the original affidavit of identification was insufficient and that the subsequent affidavits were untimely under Minn. Stat. § 145.682, subd. 4.

Stroud argues that respondents HCMC and HFA did not timely serve their answers to the original complaint. She contends that she did not grant HCMC an extension of time within which to serve its answer, but does not deny granting HFA an extension. The trial court found that the answers were timely served.

In October 1994, Stroud moved the court to amend her original complaint because her petition for appointment of trustee was allegedly defective due to a failure to obtain sig-

natures from all of her siblings. The judge granted permission, and Stroud then served respondents with the amended complaint.

Stroud challenges the dismissal of her claim, arguing that (1) the original affidavit of expert identification was sufficient; (2) the proper date for commencement of her suit is that of the amended complaint and not the original complaint, thus making the subsequent affidavits of expert identification timely; and (3) even if the affidavits were untimely or insufficient, the untimeliness was due to excusable neglect.[1] Finally, Stroud also challenges the district court's denial of her motion for default judgment, asserting that respondents' answers to her complaint and amended complaint were untimely.

### ISSUES

**I.** Did the district court err in dismissing appellant's wrongful death claim under Minn. Stat. § 145.682?

**II.** Did the district court err in denying appellant's motion for default judgment based on respondents' failure to make timely answers to appellant's complaints?

### DISCUSSION

### I.

Minn.Stat. § 145.682, subd. 4 (1994), requires that in an action alleging medical malpractice a plaintiff must submit affidavits of expert identification within 180 days after commencement of the suit. The affidavit

> must state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

*Id.* Answers to interrogatories may satisfy this requirement if they are signed by plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon defendant within the 180–day time limit. *Id.*

Minn.Stat. § 145.682, subd. 6 (1994), provides in part:

> Failure to comply with * * * subdivision 4 results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case.

The Minnesota Supreme Court interpreted the disclosure requirements of Minn.Stat. § 145.682, subd. 4, in *Sorenson v. St. Paul Ramsey Medical Ctr.*, 457 N.W.2d 188 (Minn. 1990). The issue in that case was

> whether the affidavits and answers to interrogatories in question contained sufficient details concerning "the substance of the facts and opinions" and a sufficiently precise "summary" of the grounds for each opinion.

*Id.* at 191 (quoting Minn.Stat. § 145.682, subd. 4).

The *Sorenson* court quoted a substantial portion of the plaintiff's affidavit, in which the expert reiterated the facts as documented in the clinic record and made such generalized statements as "it should have been apparent" and "there should have been timely intervention." The expert completely failed, however, to give any reasons for these conclusory statements. In finding the affidavit insufficient, the court stated:

> The purpose of expert testimony is to interpret the facts and connect the facts to conduct which constitutes malpractice and causation. Thus, to satisfy the requirements of [Minn.Stat. § 145.682, subd. 4], it is not enough simply to repeat the facts in the hospital clinic record. The affidavit should set out how the expert will use those facts to arrive at opinions of malpractice and causation. To state, as was done in this case, that the expert will testify that the defendants "failed to properly evaluate" and "failed to properly diagnose" is not enough. These are empty conclusions which, unless shown how they follow from the facts, can mask a frivolous claim.

*Id.* at 192–93. The *Sorenson* court ultimately found that due to the unique procedural circumstances of the case, defendants were

---

1. We decline to address this issue because we hold appellant's first argument to be dispositive.

estopped from seeking dismissal pursuant to Minn.Stat. § 145.682. *Id.* at 193. Nonetheless, the court stated:

> In cases commencing after this opinion is filed, * * * we will expect a more complete disclosure. In this case, there was no valid reason why plaintiffs could not have given opposing counsel a much more detailed summary of their expert's expected testimony. In future cases, plaintiffs will be expected to set forth, by affidavit or answers to interrogatories, specific details concerning their experts' expected testimony, including [1] the applicable standard of care, [2] the acts or omissions that plaintiffs allege violated the standard of care and [3] an outline of the chain of causation that allegedly resulted in damage to them.

*Id.* at 193.

In the present case, the district court found that Stroud's original affidavit of expert identification, executed by Dr. Steven M. Tredal, failed to meet the requirements of *Sorenson,* particularly with respect to causation.

It is not disputed that Dr. Tredal's affidavit satisfied the first and second requirements of *Sorenson,* regarding duty and breach of duty:

> I, Dr. Tredal, will testify that the standard of care in the evaluation and treatment of an individual with a protracted severe headache in association with other significant symptoms requires that certain diagnostic tests be performed to determine whether or not serious or life threatening intracranial disease exists as a cause of the headache. The diagnostic tests must include, but are not limited to, a CT or MRI scan and possibly a lumbar puncture.

> I, Dr. Tredal, will testify that on 1/1/94 when the Plaintiff was evaluated and treated in the emergency room at Hennepin County Medical Center there was a breach of the standard of care. The patient presented with a headache associated with neck pain, the pain worsened during the hospital stay, there was associated neck tenderness, and there was a known history of hypertension increasing the risk for serious intracranial disease. A CT or MRI

scan and possibly a lumbar puncture should have been done.

> * * * The patient presented with a headache which had persisted for 3 days, since the initial visit of 1/1/94, which was unrelieved with the pain medication, which was associated with nausea and vomiting, blurred vision, and photophobia, and which was unrelieved by parenteral pain medication in the emergency room. In view of the Plaintiff's presenting symptoms and history[,] a CT or MRI scan and possibly a lumbar puncture should have been done.

The above statements set out a standard of care and indicate why the standard of care was breached.

■ The remaining question, then, is whether the affidavit sufficiently outlines a chain of causation resulting in the patient's death. *Sorenson* does not require that every link in the chain of causation be explicitly described and explained. *See Sorenson,* 457 N.W.2d at 193. On the contrary, the supreme court went to great lengths in *Sorenson* to make it clear that the affidavit requirement is not a discovery device but, rather, a means of establishing the basic merit of a cause of action with the purpose of avoiding frivolous lawsuits. In fact, the *Sorenson* court stated, "the most important disclosure of the affidavit required by section 145.682, subdivision 4 * * * is the *identity* of an expert who is willing to testify as to the alleged negligence." *Sorenson,* 457 N.W.2d at 191.

Because every link in a chain of causation is susceptible to being reduced into a set of more discrete "sub-links," a requirement that each step in the chain of causation be explained in detail would not only be unduly burdensome and impractical; it would also impede the litigation of meritorious claims with trivial arguments over whether each link or sub-link in a chain of causation had been properly delineated in an affidavit or in answers to interrogatories. It does not appear that such a result is required to serve the purposes of Minn.Stat. § 145.682.

■ Instead, the *Sorenson* court was careful to say that future plaintiffs will be expected to set forth only "an outline of the chain of

causation." *Sorenson,* 457 N.W.2d at 193. We think that appellant's first affidavit fulfilled this requirement. The affidavit states:

I, Dr. Tredal, will testify that as a result of the breach of the standard of care on 1/1/94 and 1/4/94, as discussed, there was a failure to diagnose and treat a subarachnoid hemorrhage which ultimately resulted in a complicated hospital course and death of the plaintiff.

The above language is much more specific than that of the affidavit at issue in *Sorenson. See id.* at 192. In this case, the doctor has clearly identified a breach of a particular standard of care and has stated that "a failure to diagnose and treat a subarachnoid hemorrhage * * * ultimately resulted in a complicated hospital course and death of the plaintiff." Respondents argue that Geneva Stroud did not die from a subarachnoid hemorrhage and thus the chain of causation is incomplete. However, Stroud's death certificate indicates that the immediate cause of death was a pulmonary embolism due to a deep vein thrombosis, which in turn was caused by Stroud's subarachnoid hemorrhage.

In light of Dr. Tredal's affidavit and Geneva Stroud's death certificate, we conclude that respondents had sufficient information from which to prepare a defense. Indeed, respondents' contention that they could not adequately prepare their defense seems somewhat disingenuous in light of their own expert's opinions, which are at a variance with those of Dr. Tredal.

In the past, this court has rejected affidavits as insufficient under Minn.Stat. § 145.682 only when there is little or no meaningful disclosure on the issue of causation, such as was the case in *Sorenson.* In this case, appellant Stroud's initial affidavit was sufficient to give respondents notice of the essence of her expert testimony. The affidavit informed respondents that Stroud's claim would be that failure to do a timely CT, MRI, or lumbar puncture resulted in a failure to detect the subarachnoid hemorrhage in a timely manner, which resulted in a failure to treat the hemorrhage in a timely manner, ultimately causing Geneva Stroud's death. Thus, the affidavit provides a fair

"outline" of the chain of causation as required by *Sorenson.*

We note that in *Hempel v. Fairview Hosp.,* this court held that the following statement in a physician's affidavit was sufficient to establish a chain of causation:

[T]here is no way to prove what actually caused the heart to stop. However, it is my opinion that the sequence of events, including the restraint itself, was a participating factor in bringing about the cardiac arrest.

*Hempel v. Fairview Hosp. & Healthcare Serv.,* 504 N.W.2d 487, 491 (Minn.App.1993). In *Hempel,* this court stated:

The purpose of section 145.682 is not to deprive plaintiffs of legitimate lawsuits, but to weed out actions without evidentiary support. We find that the experts' affidavits offered by the Hempels in combination establish that their lawsuit has evidentiary support; the district court abused its discretion in ruling to the contrary. Dr. Peterson's opinion that the restraint was a "participating" factor in cardiac arrest, combined with McCullough's testimony regarding standard of care and breach, satisfy the statute's purpose of ensuring the legitimacy of this lawsuit.

*Id.* at 492. In this case, a reasonable reading of appellant's affidavit is that failure timely to diagnose Stroud's subarachnoid hemorrhage was a "participating" factor in her death, which was caused by the hemorrhage.

■ In addition, we note that although the district court evaluated Dr. Tredal's affidavit with commendable attention to *Sorenson,* it stopped short of following *Sorenson*'s analytical prerequisites to a procedural dismissal under Minn.Stat. § 145.682. *Sorenson* stated:

In deciding whether a procedural dismissal should be granted, the trial court should carefully evaluate the degree of prejudice to the defendant caused by the inadequate disclosures.

*Sorenson,* 457 N.W.2d at 193 (citing *Dennie v. Metropolitan Medical Ctr.,* 387 N.W.2d 401, 406 (Minn.1986)). There was no evaluation of the prejudice suffered by HCMC or

HFA due to the purported insufficiency of Dr. Tredal's affidavit.

The *Sorenson* court also stated:

In borderline cases where counsel for a plaintiff identifies the experts who will testify and give some meaningful disclosure of what the testimony will be, there may be less drastic alternatives to a procedural dismissal. In these instances, the court may authorize a deposition of the expert at the plaintiff's expense or limit the expert's testimony to those matters adequately disclosed.

*Id.* Even under the most restrictive interpretation of *Sorenson*, we consider that this would be at the very least a "borderline case" in which an expert was identified and there was some meaningful disclosure. Under such circumstances, Dr. Tredal would be allowed to testify as to matters that were within the scope of his affidavit. If his testimony were to begin to deviate too far from the substance of his affidavit, such that it might constitute unfair surprise or prejudice to respondents, a trial judge could instruct counsel to keep his witness within the proper scope established by the affidavit.

■ Finally, we note that even if Stroud's original affidavit of expert identification were considered to be insufficient, the supreme court has indicated that defendants may be estopped by their actions or inaction from seeking a procedural dismissal under Minn. Stat. § 145.682. *See Sorenson,* 457 N.W.2d at 193; *Thorson v. Rice County Dist. One Hosp.,* 437 N.W.2d 410 (Minn.1989). In *Sorenson,* the court held that although the affidavits and answers fell short of the requirements of Minn.Stat. § 145.682, "plaintiffs were entitled to understand that, by withdrawing their pending motion to compel answers to interrogatories, the defendant doctors were signifying their acceptance of plaintiffs' answers in satisfaction of section 145.682." *Sorenson,* 457 N.W.2d at 193.

■ In this case, respondents apparently did not inform appellant of their belief that Dr. Tredal's initial affidavit was insufficient under Minn.Stat. § 145.682 until late March 1995, roughly eight months after receiving Dr. Tredal's initial affidavit. Within five days of that notification, appellant served two additional affidavits of expert identification on respondents. Although respondents insist that in the meantime they had repeatedly requested more disclosure regarding appellant's expert testimony, the record before us does not reveal such specific request or indicate that respondents ever pointed to the claimed deficiencies in Dr. Tredal's affidavit now the cause of respondents' concerns. It was made clear at oral argument that appellant answered respondents' first set of interrogatories but failed to respond to supplementary interrogatories until a few days after this motion was served.

We think it is significant, too, that respondents made no motion to compel answers to their supplementary interrogatories or to take a deposition of the expert, despite their current position that they were ill informed regarding appellant's expert testimony. In *Thorson,* 437 N.W.2d at 415, defendants sought to rely on the mandatory dismissal provision in Minn.Stat. § 145.682. The supreme court held:

By their silence in not asserting an existing statutory defense in September of 1987, by their representation that they were interested in talking settlement whenever Rietz was ready, and by standing mute when they knew Rietz was expending time and money to establish that his client had a "case" on the merits, petitioner's attorneys waived their client's statutory right, and, as a result, we hold petitioner is now equitably estopped from asserting it at this late date as a matter of law.

*Id.* at 416. Similarly, the record in this case indicates that there was significant time and effort expended on discovery even after the 180-day time limit under Minn.Stat. § 145.682 had expired.

Stroud also argues that her subsequent affidavits were timely because they were served within 180 days of service of the amended complaint. She maintains that because the original appointment of trustee was invalid, this suit was not commenced until October 21, 1994, when the amended complaint, with a valid appointment of trustee, was served on respondents.

Both parties appear to assume that appellant's initial appointment of trustee was invalid. Appellant cites Minn.Stat. § 573.02, subds. 1 and 3 (1994), to support her contention that a failure to obtain the signatures of all of her siblings made the appointment invalid. But that statute requires only a petition by "the surviving spouse or *one* of the next of kin." *Id.* (emphasis added).

■ The appointment or removal of a trustee is within the discretion of the district court. *Regie de l'assurance Auto. du Quebec v. Jensen,* 399 N.W.2d 85, 89 (Minn.1987) (citing *In re Appointment of Trustee for the Heirs of Larsen,* 306 Minn. 364, 369, 237 N.W.2d 371, 374–75 (1975)). The Minnesota General Rules of Practice for the District Courts provide:

> Every application for the appointment of a trustee of a claim for death by wrongful act under *Minn.Stat. Sec. 573.02,* shall be made by the verified petition of the surviving spouse or one of the next of kin of the decedent. The petition shall show the dates and places of the decedent's birth and death; the decedent's address at the time of death; the name, age and address of the decedent's surviving spouse and each next of kin; and the name, age, occupation and address of the proposed trustee.

Minn.R.Gen.Pract. 144.01. It is true that the original petition did not list the names and addresses of all next of kin. Nonetheless, the petition was granted, and we have been cited to no authority to suggest that such a flaw is fatal to the validity of the appointment. Because the district court did not rule that the appointment was void, we reject Stroud's argument that this case was not commenced until her amended complaint was filed.

We also note that appellant's position is contrary to the principle of "relation back" under the rules of civil procedure:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Minn.R.Civ.P. 15.03; *see Grothe v. Shaffer,* 305 Minn. 17, 232 N.W.2d 227 (1975) (amended complaint adding father of deceased minor as plaintiff related back to date of original complaint). *But see Regie de l'assurance Auto.,* 399 N.W.2d at 86 ("Unless a cause of action has been legally asserted by a duly appointed trustee prior to the expiration of the three-year commencement of suit limitation * * * any subsequent attempted amendment after the expiration of the limitation period to cure the defect will not 'relate back' so as to revive the action.").

Finally, although we believe that Stroud's subsequent affidavits of expert identification were untimely, we do think that they are relevant to the issue of prejudice. Respondents were served with these affidavits just days after having complained that the original affidavit of expert identification was insufficient under Minn.Stat. § 145.682. It is difficult to perceive any real prejudice suffered by respondents. We conclude that respondents are estopped from obtaining a procedural dismissal pursuant to section 145.682. *See Sorenson,* 457 N.W.2d at 193; *Thorson,* 437 N.W.2d at 415–16.

## II.

■ Stroud argues that both respondents HCMC and HFA failed to answer the original complaint timely. The trial court found that both HCMC and HFA were given extensions and that they complied with those extensions. The record supports this finding. Stroud also argues that both HCMC and HFA were untimely with their answers to the amended complaint. The district court found that both answers were timely. The record also supports this finding. Accordingly, we cannot say that the district court abused discretion in denying appellant's motion for default judgment.

■ Furthermore, just as respondents are estopped from seeking dismissal under Minn.Stat. § 145.682, so too, Stroud is estopped from complaining of respondents' untimely answers. "An attorney may waive the right to object to an adversary's untimely service of pleadings." *Doe v. Legacy Broadcasting of Minnesota, Inc.,* 504 N.W.2d 527, 528 (Minn.App.1993) (citing *Bentley v. Kral,*

223 Minn. 248, 251, 26 N.W.2d 532, 533 (1947) (citing *Smith v. Mulliken,* 2 Minn. 319, 322, 2 Gil. 273, 276 (1858)). In *Doe,* this court stated:

> Four months passed between respondent's acceptance of appellant's answer and her motion for default judgment. During that time, the parties' attorneys contacted each other and participated in mediation. Moreover, they scheduled depositions of some of the witnesses that would testify at trial. Based on these facts, respondent cannot now be heard to object to the untimeliness of an answer that she had already accepted as the prerequisite to proceed to trial.

*Doe,* 504 N.W.2d at 529. Likewise, in this case, Stroud accepted respondents' answers and moved forward with discovery, failing to move for default judgment until roughly five months after the answers to the amended complaints were received.

## DECISION

Appellant's original affidavit of expert identification was sufficient to meet the requirements of Minn.Stat. § 145.682. The district court erred in dismissing appellant's claim under that statute. Respondents are estopped from obtaining a procedural dismissal. The district court properly denied appellant's motion for default judgment. The order is reversed in part, affirmed in part, and remanded.

**Affirmed in part, reversed in part, and remanded.**