Ruth **STENSRUD, et al., Appellants,**

v.

**LYON COUNTY DITCH # 7, Respondent.**

No. C1–99–1316.

Court of Appeals of Minnesota.

April 25, 2000.

Review Denied June 27, 2000.

Steven J. Vatndal, Gislason & Hunter, LLP, Mankato, MN (for appellants).

Arvid Wendland, Wendland Timmerman, Blue Earth, MN (for respondent).

Considered and decided by RANDALL, Presiding Judge, AMUNDSON, Judge, and HUSPENI, Judge.

## OPINION

DORIS OHLSEN HUSPENI,* Judge.

A downstream drainage authority challenges the trial court's denial of a permanent injunction against an improvement to an upstream drainage system's ditch. The upstream system claims the trial court erred in determining that (1) Minn.Stat. § 103E.401, subd. 2 (1996), required it to apply for an outlet permit from the downstream system and (2) the downstream system's claim for injunctive relief was not an impermissible collateral attack on the upstream system's order establishing the improvement. Because the upstream system was not required to apply for an outlet permit from the downstream system, we reverse.

## FACTS

This case arises from a dispute between two drainage authorities. Respondent Lyon County Ditch # 7 (CD7) is controlled by the Lyon County Board. CD7 drains land in Lyon County and runs downstream into appellant Yellow Medicine/Lyon County Judicial Ditch # 10 (JD10).[1] JD10 is

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The claim of Ruth Stensrud, an owner of land benefited by CD7, was dismissed by the trial court at the end of the trial in this case. That dismissal is not challenged in this appeal.

located in Yellow Medicine County but also extends into Lyon County; it is controlled by the Yellow Medicine/Lyon County Joint Ditch/Judicial Ditch # 10 Drainage Authority. The land drained by CD7 comprises less than one-tenth of the total JD10 watershed.

On August 8, 1996, the CD7 drainage authority approved a motion to improve CD7. JD10 believed CD7 had a duty under Minn.Stat. § 103E.401, subd. 2 (1996), to apply for an outlet permit before improving the CD7 ditch. CD7 made the improvement but did not apply for a permit from JD10.

CD7 brought an action in Lyon County for a declaratory judgment to determine whether Minn.Stat. § 103E.401, subd. 2, required CD7 to apply for a permit from JD10 before improving the CD7 ditch. JD10 counterclaimed against CD7 for an injunction to physically restrict the water flow between the ditches to its pre-improvement level until CD7 applied for a permit.

The trial court issued a temporary injunction restricting the outlet between the ditches, and CD7 appealed, claiming JD10 had no standing to sue. We affirmed the trial court in *VanLerberghe v. Joint Judicial Ditch # 10 Drainage Auth.*, No. C5–98–921, 1999 WL 10258 (Minn.App. Jan.12, 1999).

During the trial, both parties presented evidence regarding whether the improvement to CD7 resulted in any new lands being drained by JD10. This testimony was primarily about Lady Slipper Lake. Appellants argued that at one time the lake overflowed to the south, but that after the improvement it overflowed to the north and into CD7. The trial court was not persuaded by this evidence, and it found that no new lands were drained by the improvement.

After trial, the court dissolved the temporary injunction and denied JD10's claim for permanent injunctive relief, finding: (1) JD10 did not establish irreparable

harm, (2) JD10 had unclean hands, and (3) JD10 had an adequate alternative remedy at law. The court also found CD7 was required to apply for a permit under Minn. Stat. § 103E.401, subd. 2.

JD10 challenges all three of the grounds upon which the trial court denied injunctive relief. CD7 filed a notice of review challenging (1) whether Minn.Stat. § 103E.401, subd. 2, required CD7 to apply for a permit from JD10 and (2) whether JD10's action for injunctive relief was an impermissible collateral attack on CD7's order establishing the improvement.

## ISSUE

Was CD7 required to apply for an outlet permit under Minn.Stat. § 103E.401, subd. 2 (1996)?

## ANALYSIS

■ We review statutory construction de novo. *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn. 1990); *see also Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984) (holding no deference is required on review of a purely legal issue).

Minn.Stat. § 103E.401, subd. 2 (1996), provides:

After the construction of a drainage project, a public or private drainage system that drains property not assessed for benefits for the established drainage system may not be constructed to use the established drainage system as an outlet without obtaining express authority from the drainage authority having jurisdiction over the drainage system proposed to be used as the outlet. This section is applicable to the construction of a public or private drainage system that outlets water into an established drainage system regardless of the actual physical connection.

Minn.Stat. § 103E.401, subd. 2.

■ CD7 argues this statute requires an upstream drainage authority to get per-

mission from a downstream drainage authority for ditch construction only when the construction expands the watershed area to include land not previously assessed by the downstream drainage authority. Citing *Oltman v. Von Ohlen,* CD7 claims no permission was required because the improvement to CD7 did not expand the watershed. *See Oltman v. Von Ohlen,* 257 N.W.2d 338, 341 (Minn.1977) (holding previous version of statute did not apply to improvement of existing ditch into which no new lands would be drained). We agree.

The relevant drainage code provision in effect at the time of *Oltman* provided:

> After the construction of any county or judicial ditch, no public or private ditch or ditch system, either open or tiled, for the drainage of land not assessed for benefits for such ditch, shall be constructed so as to use the ditch as an outlet without having first secured express authority so to do from the county board[.]

Minn.Stat. § 106.531 (1976).

In *Oltman,* the appellant argued the statute required respondent to get permission from the county board before using a county ditch as an outlet. 257 N.W.2d at 341. The supreme court held:

> [the] statute applies only to *construction* of a ditch "for the drainage of *land not assessed for benefits for such ditch.*" Since the petition herein is for the *improvement* of an existing ditch into which the affected lands have previously been drained, the statute is inapplicable.

*Id.* (emphasis in original).

JD10 argues that the trial court correctly held that *Oltman* did not apply here because the current version of the statute applies to improvements of existing ditches whereas the earlier version did not. But the version of the statute in effect at the time of *Oltman,* already included "improvement" in the definition of "ditch." Minn.Stat. § 106.011, subd. 17 (1976). Moreover, a close examination of the stat-

ute and of *Oltman* demonstrates that the critical factor is whether the construction at issue, be it an improvement to an existing ditch or an entirely new ditch, will expand the existing watershed.

Our interpretation is supported by the legislative history of Minn.Stat. § 103E.401, subd. 2, which shows that no substantive changes have been made to these provisions of the drainage code since *Oltman.* 1985 Minn. Laws ch. 172, § 132 (stating changes made in recodifying drainage law as chapter 106A were intended to clarify and reorganize, not alter meaning); 1987 Minn. Laws ch. 239, §§ 7, 8 (clarifying language in Minn.Stat. § 106A.005); 1990 Minn. Laws ch. 391, art. 10, § 1 (stating changes made in recodifying drainage law shall not be construed as substantive); *see also In re Petition for Establishment of County Ditch No. 11,* 511 N.W.2d 54, 56 (Minn.App.1994) (tracing history of various recodifications of drainage statute since 1984 and noting recodifications did not alter substance of law), *review denied* (Minn.1994).

In this case, the trial court noted there was some risk that the improvement to CD7 would increase the burden on JD10 by draining the pre-existing CD7 watershed more efficiently. But the statute does not require a permit in that situation. It requires a permit only when the construction "drains property not assessed for benefits for the established drainage system." Minn.Stat. § 103E.401, subd. 2.

In its findings, the trial court observed that it was unable to determine the potential flooding impact of the improvement. More importantly, the trial court stated:

> This court is satisfied from all of the evidence before it that while the improvement drains existing lands in the CD 7 watershed faster and more efficiently, * * * the improvement does *not* drain any new land.

(Emphasis in original.)

■ The record supports the trial court's determination that the improve-

ment does not drain any new land. Both sides presented testimony on this issue, but the trial court resolved the issue in respondent's favor. We defer to the trial court's determinations of witness credibility. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988). Having determined that the improvement does not drain any new land, the court was without authority to require that CD7 seek an outlet permit from JD10.

■ In view of our determination that Minn.Stat. § 103E.401, subd. 2, does not require that an outlet permit be sought in this case, we need not reach the allegation by JD10 that denial of the injunctive relief it sought was error. Nor need we address the allegation by CD7 that the action of JD10 in seeking injunctive relief was an impermissible attack on CD7's order establishing the improvement.

### DECISION

Because the improvement of an upstream system did not drain any new lands, CD7 is not required to seek an outlet permit from JC10 under Minn.Stat. § 103E.401, subd. 2 (1996).

**Reversed.**