### In the Matter of the WELFARE OF J.K.

### No. C7–01–1273.

Court of Appeals of Minnesota.

March 26, 2002.

Mike Hatch, Attorney General, St. Paul; and Amy Klobuchar, Hennepin County At-

torney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, for respondent State of Minnesota.

Leonardo Castro, Chief Fourth District Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, for appellant J.K.

Considered and decided by CRIPPEN, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

PETERSON, Judge.

This appeal is from an order revoking appellant J.K.'s probation imposed in an extended jurisdiction juvenile (EJJ) prosecution following convictions of third-degree criminal sexual conduct and crime committed for the benefit of a gang. J.K. argues that the district court abused its discretion in revoking probation and executing an 81–month adult prison sentence based on a series of "technical violations," including truancy from school, missing some juvenile programming, and violating a no-contact order. We affirm.

## FACTS

In April 1998, a delinquency petition was filed charging J.K. with committing multiple counts of first-and third-degree criminal sexual conduct and crime committed for the benefit of a gang. The parties entered into a plea agreement, under which J.K. admitted to committing one count each of third-degree criminal sexual conduct and crime committed for the benefit of a gang. The plea agreement provided for an 81–month adult prison sentence but with execution stayed on the condition that J.K. successfully complete EJJ probation.

J.K. was 14 years old when he committed the offenses. In the order revoking probation, the district court found:

The offenses were committed against two young girls, ages 12 and 13, who were sexually assaulted by multiple individuals as part of a gang initiation. [J.K.] was in the car that drove Victim One to the garage where Victim Two was being assaulted. He admitted to having intercourse with Victim One and stated that he was the third one to "f ...." her and that he ejaculated in her because another gang member told him to kill his sperm. [J.K.] was an active participant and forced the girls to have sexual intercourse with him at different times in a garage. Both victims were allegedly prevented from leaving. After one of the victims had been assaulted by another accomplice, [J.K.] pushed the victim back to the floor and forcibly penetrated her vagina with his penis. The victim tried to get away and told [J.K.] she was in pain during sexual intercourse. Afterwards, [J.K.] and the other gang members celebrated by going to McDonalds.

J.K. was committed to Mille Lacs Academy, a residential treatment program for sex offenders. In February 2000, J.K. was discharged from Mille Lacs Academy after successfully completing the program and ordered to live with his parents and comply with probation conditions, including having no contact with known gang members. In May 2000, the district court ordered J.K. to Kohler Hall's 21/14–day consequence program. The court also ordered J.K. to complete the Wilder Foundation Social Adjustment Program for Southeast Asians and to have no contact with N.X. J.K. was discharged from Kohler Hall on May 25, 2000. On June 28, 2000, J.K. admitted violating probation by violating the no-contact order and curfew and by failing to attend the Southeast

Asian program at Wilder. The district court ordered him committed to the Boys Totem Town long-term residential program. In February 2001, J.K. was discharged from Boys Totem Town and placed on enhanced supervised probation, a program designed to provide structure, accountability, and community-based resources to felony-level offenders who pose a high risk to public safety.

On April 6, 2001, J.K.'s probation officer, Dominic Dzik, filed a notice of violation of probation. Dzik alleged that J.K. had committed the following probation violations: failed to complete weekend work crew on three occasions in February and March 2001; failed to follow curfew on numerous occasions; failed to attend a scheduled enrollment appointment at Central High School on March 5, 2001; truant from classes at Central High School on several occasions; violated the no-contact order with N.X. on several occasions; failed to fully cooperate with the Wilder Southeast Asian program; and absent from classes at Transitions for Success School on numerous occasions.

At a violation hearing in May 2001, J.K. admitted that he had failed to complete weekend work crew on two occasions; violated curfew about six times; failed to attend an enrollment appointment at Central High School on March 5, 2001; failed to attend about half of his classes after enrolling at Central High School on March 6, 2001; failed to fully cooperate with the Wilder Southeast Asian program initially, although J.K. claimed he had been meeting that requirement at the time of the violation hearing; and was absent from classes at Transitions for Success School, although he claimed those absences were due to having to care for his infant son. J.K. denied violating the no-contact order with N.X., claiming that those violations had been addressed in a previous violation hearing, which resulted in his commitment to Boys Totem Town. The district court, however, found that J.K. admitted violating the no-contact order with N.X.

At the contested disposition hearing, Dzik testified that when placed in the community, J.K. was consistently noncompliant with probation conditions. Dzik cited the examples of J.K. staying out until 12:00 or 1:00 a.m. despite a 9:00 p.m. curfew and of J.K. having a sexual relationship and fathering a child with N.X., an 18–year–old female gang member who is married to a relative of J.K.'s, despite the no-contact order. Dzik also expressed concern about J.K. displaying an attitude that he would do as he wanted despite a clear understanding of probation conditions and expectations and repeated warnings that continued violations could result in the revocation of probation. Dzik recommended revoking J.K.'s EJJ probation because, despite the variety of community-based and long-term residential treatment programs that had been made available to J.K., he continued to display an unwillingness to comply with probation and to exhibit the same behaviors that brought him before the juvenile court and led to his designation as an EJJ.

Donna Gillitzer, a Hennepin County juvenile probation officer who supervises EJJ clients, testified that she reviewed J.K.'s entire probationary file, met with him several times, and presented his file for review by the Hennepin County EJJ screening committee. Gillitzer and the screening committee agreed that despite being given numerous opportunities to remain in the juvenile justice system, J.K. failed to comply with the expectations of his EJJ status. Gillitzer explained that although J.K. did very well in placements, when he returned to the community, he reverted to noncompliance with probation conditions. Gillitzer testified that J.K.

continued to exhibit the same types of behavior that he exhibited when he committed the offenses that resulted in his EJJ status and that those types of behavior created a public-safety concern. Gillitzer also testified that J.K. had told her that he did not want further treatment. Gillitzer and the Hennepin County screening committee recommended revoking J.K.'s probation.

## ISSUE

Did the district court err in revoking J.K.'s probation?

## ANALYSIS

■ This court applies an abuse-of-discretion standard when reviewing a district court's revocation of probation. *State v. Bradley,* 592 N.W.2d 886, 887 (Minn.App. 1999), *review denied* (Minn. July 28, 1999). But revocation of EJJ probation is governed by statute, and statutory construction is a question of law subject to de novo review. *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 190 (Minn. 1990).

Minn.Stat. § 260B.130 (2000) governs EJJ prosecutions. If an EJJ prosecution results in a guilty plea or a finding of guilt, the district court shall

impose an adult criminal sentence, the execution of which shall be stayed on the condition that the offender not violate the provisions of the disposition order and not commit a new offense.

*Id.,* subd. 4(a)(2).

■ Generally, in revoking probation, a district court must (1) designate the specific probation condition or conditions that were violated, (2) find that the violation was intentional or inexcusable, and (3) find that the need for confinement outweighs the policies favoring probation. *State v. Austin,* 295 N.W.2d 246, 250

(Minn.1980). But when considering the revocation of EJJ probation, the court's discretion must be exercised consistently with the provisions of Minn.Stat. § 260B.130, subd. 5. *Bradley,* 592 N.W.2d at 887. The text of the EJJ statute dictates that the district court need not consider the third *Austin* factor, whether the need for confinement outweighs the policies favoring probation. *Id.* at 888.

■ 1. J.K. argues that the district court did not find that his probation violations were intentional or inexcusable. Following the revocation hearing, the district court orally found that J.K.'s violations were "intentional and unexcusable." Moreover, although the court did not specifically find in its written order that J.K.'s violations were intentional and inexcusable, we can infer such a finding from a reading of the district court's order as a whole, and the evidence supports such a finding. Although J.K. presented evidence of cultural difficulties to excuse his behavior, the testimony of Dzik and Gillitzer showed that J.K. deliberately and repeatedly refused to comply with probation requirements or take advantage of treatment opportunities and instead continued to engage in the behaviors that led to his EJJ status.

2. J.K. next argues that the district court's comments at the revocation hearing seemed to imply that the court incorrectly believed that under Minn.Stat. § 260B.130, subd. 5, it had little choice about the revocation and was required to execute the previously imposed sentence. J.K. argues that Minn.Stat. § 260B.130, subd. 5, requires revocation only when the original offense of the probationer fell under Minn.Stat. § 260B.130, subd. 1(2), and the offense for which he was previously sentenced did not fall under Minn.Stat. § 260B.130, subd. 1(2). J.K.'s interpreta-

tion of Minn.Stat. § 260B.130, subd. 5, is incorrect.

Minn.Stat. § 260B.130, subd. 5, states:

If the offender was convicted of *an offense described in* [Minn.Stat. § 260B.130,] *subdivision 1, clause (2)*, and the court finds that reasons exist to revoke the stay, the court must order execution of the previously imposed sentence unless the court makes written findings regarding the mitigating factors that justify continuing the stay.

(Emphasis added.)

Minn.Stat. § 260B.130, subd. 1, states:

A proceeding involving a child alleged to have committed a felony offense is an extended jurisdiction juvenile prosecution if:

(1) the child was 14 to 17 years old at the time of the alleged offense, a certification hearing was held, and the court designated the proceeding an extended jurisdiction juvenile prosecution;

(2) the child was 16 or 17 years old at the time of the alleged offense; the child is alleged to have committed an offense for which the sentencing guidelines and applicable statutes presume a commitment to prison or to have committed any felony in which the child allegedly used a firearm; and the prosecutor designated in the delinquency petition that the proceeding is an extended jurisdiction juvenile prosecution; or

(3) the child was 14 to 17 years old at the time of the alleged offense, the prosecutor requested that the proceeding be designated an extended jurisdiction juvenile prosecution, a hearing was held on the issue of designation, and the court designated the proceeding an extended jurisdiction juvenile prosecution.

J.K. argues that when used in Minn. Stat. § 260B.130, subd. 5, the phrase "an offense described in subdivision 1, clause (2)," means an offense that meets all of the criteria in Minn.Stat. § 260B.130, subd. 1(2). Therefore, J.K. continues, because he was 14 when he committed his offense and the prosecutor did not designate in the delinquency petition that the proceeding is an EJJ prosecution, he did not commit an offense described in Minn.Stat. § 260B.130, subd. 1(2). The state argues that the phrase "an offense described in subdivision 1, clause (2)," refers to the single criterion in Minn.Stat. § 260B.130, subd. 1(2), that limits application of the clause to "an offense for which the sentencing guidelines and applicable statutes presume a commitment to prison or * * * any felony in which the child allegedly used a firearm." The overall structure of Minn.Stat. § 260B.130, subd. 1, persuades us that the state's interpretation of Minn. Stat. § 260B.130, subd. 5, is correct.

The individual clauses in Minn.Stat. § 260B.130, subd. 1, describe three sets of criteria under which "[a] proceeding involving a child alleged to have committed a felony offense is an extended jurisdiction juvenile prosecution." The individual clauses do not describe offenses; they describe circumstances under which a proceeding that involves an alleged felony offense becomes an EJJ prosecution. One criterion in subdivision 1, clause 2, is that the alleged offense is "an offense for which the sentencing guidelines and applicable statutes presume a commitment to prison or * * * any felony in which the child allegedly used a firearm." This criterion describes offenses. The other criteria in subdivision 1, clause 2, describe the offender and activities of the prosecutor.

■ Because Minn.Stat. § 260B.130, subd. 5, refers to "an offense described in [Minn.Stat. § 260B.130,] subdivision 1, clause (2)," rather than to an EJJ prosecution under Minn.Stat. § 260B.130, subdivision 1, clause (2), we conclude that "an

offense described in subdivision 1, clause (2)," means an offense for which the sentencing guidelines and applicable statutes presume a commitment to prison or any felony in which the child allegedly used a firearm. J.K. does not dispute that he was convicted of such an offense. Consequently, under Minn.Stat. § 260B.130, subd. 5, the court was required to revoke the stay and order execution of J.K.'s sentence unless it made written findings regarding mitigating factors that justified continuing the stay.

This interpretation of Minn.Stat. § 260B.130, subd. 5, is consistent with Minn. R. Juv. P. 19.09, subd. 3(C)(2), which states:

> If the court finds upon clear and convincing evidence that any provisions of the disposition order were violated, or if the probationer admits the violation, and the extended jurisdiction juvenile conviction was for an offense with a presumptive prison sentence or the probationer used a firearm, the court shall order the execution of the sentence or make written findings indicating the mitigating factors that justify continuing the stay.

Under rule 19.09, subd. 3(C)(2), if the probationer violates the disposition order, and the probationer was convicted of "an offense with a presumptive prison sentence or the probationer used a firearm," the court is required to revoke probation and execute the sentence unless it makes written findings indicating that mitigating factors justify continuing the stay. The rule refers only to particular offenses; it does not refer to characteristics of the offender or to activities of the prosecutor.

■ 3. J.K. contends that because mitigating factors that justified continuing the stay existed as a matter of law, the district court erred in revoking his probation under Minn.Stat. § 260B.130, subd. 5. We disagree. The district court found:

> [J.K.'s] counsel urged the court to consider certain circumstances as mitigating factors which would justify continuing the stay of the eighty-one month prison commitment. Specifically, counsel stated that when [J.K.] was returned to the community his family was unable to provide enough structure for him. This was due in part to a language barrier and the fact that [J.K.'s] family has chosen to stay within their Hmong community. [J.K.] has also chosen to stay very much within the Hmong community and so, "it is hard for him to get motivated to go out and do what he has to do on his own." Counsel also characterized [J.K.'s] probation violations as "technical" and emphasized that [J.K.] has not been cited for any new offenses. The court finds that the aforementioned circumstances do not rise to the level of persuasive mitigating factors which would justify continuation of [J.K.'s] EJJ status or the stay of the eighty-one month sentence.

Given the numerous and varied treatment services made available to J.K. and J.K.'s continuing refusal to comply with probation conditions, we cannot conclude that the district court erred when it found that J.K.'s family circumstances and the "technical" nature of his violations did not constitute mitigating factors.

## DECISION

The district court did not err in revoking J.K.'s probation and executing the 81-month adult prison sentence.

**Affirmed.**