Robert MERCER, Appellant,

v.

Steven ANDERSEN, M.D.,
et al., Respondents,

Connie Ring, R.N., et al., Respondents.

No. A05–1103.

Court of Appeals of Minnesota.

June 6, 2006.

J. Mark Catron, Patrick W. Ostergren, Hansen, Dordell, Bradt, Odlaug & Bradt, PLLP, St. Paul, MN, for appellant.

Mark W. Hardy, Geraghty, O'Loughlin & Kenney, St. Paul, MN, for respondents Steven Andersen, M.D., et al.

Mike Hatch, Attorney General, P. Kenneth Kohnstamm, Assistant Attorney General, St. Paul, MN, for respondents Connie Ring, R.N., et al.

Considered and decided by HALBROOKS, Presiding Judge; LANSING, Judge; and SHUMAKER, Judge.

## OPINION

LANSING, Judge.

The district court dismissed with prejudice Robert Mercer's medical-malpractice claims against Steven Andersen and partially dismissed his malpractice claims against the remaining defendants for failure to comply with the expert-review requirements of Minn.Stat. § 145.682 (2004). On appeal Mercer challenges both dismissals. Because we conclude that the district court properly exercised its jurisdiction by dismissing the complaint against Andersen as outside the statute of limitations, correctly applied the statutory expert-review requirements, and acted within its discretion by denying Mercer's motion to extend the scheduling-order deadline, we affirm.

## FACTS

Robert Mercer was an inmate at a Minnesota correctional facility in May 2000 when he developed an inflammation related to his previously diagnosed condition of psoriasis and sought treatment at the facility's health clinic. Dr. Steven Andersen consulted with Mercer and prescribed a treatment of ultraviolet light. Andersen ordered Mercer to expose the inflamed area of his face to ultraviolet light for twenty minutes, three times a week, for six months. Mercer began the self-administered treatment the next day. Connie Ring, a nurse at the facility, showed him Andersen's order prescribing treatment and instructed him on the use of the light machine and the necessity of wearing protective goggles. In his first and only treatment session, Mercer did not wear the goggles and, wearing only his underwear, exposed his entire body to the ultraviolet light for approximately fifteen minutes. As a result of this session, Mercer sustained burns all over his body and also experienced eye pain. He was diagnosed with keratitis, an inflammation of the cornea.

In March 2004 Mercer sued Andersen, Ring, Correctional Medical Services, Inc., and the State of Minnesota Department of Corrections for negligence and battery. Mercer did not obtain personal service of Andersen who had moved to Haiti with his family in August 2000 to accept a position as medical director of a missionary clinic. In July 2004 Andersen moved to dismiss the claims against him for insufficiency of process and expiration of the statute of limitations. The district court dismissed the complaint with prejudice, reasoning that the statute of limitations barred the action. The district court then granted partial dismissal for the remaining parties under Minn.Stat. § 145.682, subd. 6 (2004),

holding that Mercer failed to satisfy the statutory expert-review requirements for medical-malpractice claims because his expert affidavit failed to address causation between the alleged negligent acts and Mercer's alleged permanent injuries. The court also denied Mercer's motion to extend the scheduling-order deadline to allow him to comply with the expert-review statute.

Mercer raises four issues on appeal. First, he argues that the court lacked jurisdiction to dismiss his case against Andersen with prejudice. Second, he asserts that, even if the court had jurisdiction, Andersen's absence from Minnesota tolled the statute of limitations. Third, he contends that the court erred by dismissing his claims alleging permanent injuries because he complied with the requirements of the expert-review statute. Finally, Mercer argues that, if his expert affidavit did not satisfy the statutory requirements, the court erred by denying his motion to extend the scheduling-order deadline for good cause.

## ISSUES

I. When the plaintiff concedes that service was insufficient, does the district court have jurisdiction to determine whether the statute of limitations bars the claim?

II. Did the district court err by concluding that a nonresident defendant was subject to service of process in Minnesota and that the plaintiff did not conduct a diligent search under Minn.Stat. § 541.13 (2004) that would toll the statute of limitations?

III. Did the district court abuse its discretion by partially dismissing medical-malpractice claims for noncompliance with the expert-review requirements of Minn.Stat. § 145.682 (2004)?

IV. Did the district court abuse its discretion by denying the plaintiff's motion to extend for excusable neglect a scheduling-order deadline?

## ANALYSIS

### I

■ Jurisdiction is a question of law, which we review de novo. *Johnson v. Murray*, 648 N.W.2d 664, 670 (Minn.2002). Mercer argues that because he conceded that service on Andersen was insufficient, the court lacked jurisdiction to consider that part of Andersen's motion requesting dismissal with prejudice based on expiration of the statute of limitations. We are unable to find authority that supports Mercer's claim that the court exceeded its jurisdiction by considering the effect of the statute of limitations on Mercer's claims against Andersen.

■ A case commences when a summons and complaint are served. Minn. R. Civ. P. 3.01–3.02. Ineffective service of a defendant results in a lack of personal jurisdiction. *Tullis v. Federated Mut. Ins. Co.*, 570 N.W.2d 309, 311 (Minn.1997). Although a court's authority over an ineffectively served defendant may be circumscribed, the court has the power to determine whether it has jurisdiction. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 290–92, 67 S.Ct. 677, 694–95, 91 L.Ed. 884 (1947) (holding that court has jurisdiction to determine whether it has jurisdiction); *Carter v. United States*, 135 F.2d 858, 861 (5th Cir.1943) ("[E]xcept in case of plain usurpation, a court has jurisdiction to determine its own jurisdiction."); *see also* Dan B. Dobbs, *Beyond Bootstrap: Foreclosing the Issue of Subject–Matter Jurisdiction Before Final Judgment*, 51 Minn. L.Rev. 491, 494 (1967)

(discussing court's ability to determine whether it has jurisdiction unless legislature has stated otherwise).

 Andersen, the ineffectively served defendant, has not challenged the district court's jurisdiction to determine the statute-of-limitations issue. To the contrary, it is Andersen's motion for dismissal with prejudice that invokes the district court's consideration of the issue. Mercer has neither directly challenged Andersen's capacity to raise the statute-of-limitations issue nor argued that this request for relief waived Andersen's defense of insufficient service of process. *See Patterson v. Wu Family Corp.*, 608 N.W.2d 863, 867–68 (Minn.2000) (addressing circumstances under which defendant involuntarily waives defense of lack of personal jurisdiction). Instead, Mercer argues that a court dismissing a case for lack of personal jurisdiction has no authority to decide any other issue and must dismiss the action without prejudice. We conclude that Mercer characterizes the district court's authority too narrowly.

 Statutes of limitations are both procedural and substantive because they regulate when a party may file a lawsuit and when a lawsuit is barred. *Lombardo v. Seydow–Weber*, 529 N.W.2d 702, 704 (Minn.App.1995), *review denied* (Minn. Apr. 27, 1995). Although the statute of limitations is a waivable affirmative defense, Andersen immediately raised the issue as a bar to the claim in his first motion to the court, thereby bringing the issue into controversy. *See Bd. of County Comm'rs v. Miller*, 101 Minn. 294, 297, 112 N.W. 276, 277 (1907) (stating that statute of limitations is affirmative defense that can be waived if not raised timely). Andersen raised both ineffective service and the statute of limitations in his motion to dismiss.

 The effect of a statute of limitations is an issue separate from subject matter jurisdiction and personal jurisdiction. *See Day v. McDonough,* —— U.S. ——, ——, 126 S.Ct. 1675, 1681, 164 L.Ed.2d 376, —— (2006) (stating that statute-of-limitations defense is not jurisdictional); *Larson v. Dunn,* 460 N.W.2d 39, 43 (Minn.1990) ("[W]hether a claim is time barred is an issue separate from the issue of personal jurisdiction." (quotation omitted)). But some interplay exists between the two doctrines. *Larson,* 460 N.W.2d at 43. And, although a district court is not obligated to consider on its own initiative whether a claim is timely, it nonetheless has the authority to dismiss, sua sponte, an untimely claim if the parties have fair notice and an opportunity to present their position. *See Day,* 126 S.Ct. at 1681 (holding that court has discretion, but not obligation, to raise time bar on its own); *Eberhart v. United States,* —— U.S. ——, ——––——, 126 S.Ct. 403, 403–05, 163 L.Ed.2d 14 (2005) (distinguishing between rules governing subject matter jurisdiction and inflexible claims-processing rules); *Rubey v. Vannett,* 714 N.W.2d 417, 422, 2006 WL 1171857, at *4 (Minn. May 4, 2006) (discussing jurisdictional and claims-processing rules); *see also Miernicki v. Duluth Curling Club,* 699 N.W.2d 787, 788–89 (Minn.App.2005) (noting that statute of limitations "prescribe[s] a period within which a right may be enforced and after which a remedy is unavailable for reasons of private justice and public policy" (quotation omitted)), *review denied* (Minn. Sept. 20, 2005). For these reasons, we conclude that the district court did not err by addressing both the service and timeliness components of Andersen's motion.

We reject Mercer's claim that this result conflicts with *Lewis v. Contracting Northwest, Inc.,* 413 N.W.2d 154 (Minn.App. 1987). In *Lewis,* the court held that a

determination that service is ineffective should result in a dismissal without prejudice. *Id.* at 157. The *Lewis* holding must be read in the context of the facts presented in that case. The plaintiff in *Lewis* sought an order retroactively validating his improper service. *Id.* The issue in *Lewis* was whether the district court had the power to retroactively validate insufficient service of process, not whether a district court has jurisdiction to consider a timely motion to dismiss based on both insufficient service of process and expiration of the statute of limitations. *Id.* We further note that this court has previously considered and affirmed a district court decision to dismiss with prejudice an action for insufficient service of process in conjunction with a statute-of-limitations argument. *See Johnson v. Husebye,* 469 N.W.2d 742, 745–46 (Minn.App.1991) (affirming district court's determinations that service was ineffective and statute of limitations would bar refiled complaint), *review denied* (Minn. Aug. 2, 1991).

## II

A plaintiff must bring a medical-malpractice claim within four years of the date the cause of action accrued. Minn. Stat. § 541.076(b) (2004). It is undisputed that Mercer did not effect service on Andersen as required by the Minnesota Rules of Civil Procedure. *See* Minn. R. Civ. P. 3.01, 4.03–.04 (setting forth when action commences and methods of service). When a medical-malpractice claim is based on a single act of allegedly negligent conduct rather than a course of treatment, the cause of action accrues when the plaintiff sustains damage from the act. *Doyle v. Kuch,* 611 N.W.2d 28, 31 (Minn.App.2000). Mercer's cause of action against Andersen therefore accrued on May 31, 2000, after exposure to the ultraviolet light. Unless Andersen's absence from the state tolled the statute of limitations, Mercer could not sue Andersen for malpractice after May 31, 2004.

A statute of limitations may be tolled if the person against whom a cause of action accrued later leaves the state. Minn.Stat. § 541.13 (2004). If the absent person is not subject to Minnesota laws governing service of process while out of the state or cannot be found after a diligent search for personal service, the period during which the person is absent from the state is not counted for purposes of the statute of limitations. *Id.* Tolling ensures that the statute of limitations will not bar a cause of action when a plaintiff cannot obtain personal jurisdiction over a defendant who is outside the state. *Long v. Moore,* 295 Minn. 266, 270, 204 N.W.2d 641, 643 (1973). When an adequate provision exists for acquiring personal jurisdiction over a nonresident, however, this danger is not present, and the statute of limitations is not tolled. *Id.* at 269–71, 204 N.W.2d at 643–44. The plaintiff bears the burden of proving that the statute of limitations should be tolled. *Bartlett v. Miller & Schroeder Muns., Inc.,* 355 N.W.2d 435, 441 (Minn.App.1984).

We review a dismissal with prejudice for an abuse of discretion, and we see no abuse of discretion in the court's determination that neither of the conditions that would toll the statute of limitations is satisfied in this case. *See Minn. Humane Soc'y v. Minn. Federated Humane Soc'ys,* 611 N.W.2d 587, 590 (Minn. App.2000) (stating standard of review for dismissal with prejudice). Minnesota's long-arm statute allows Minnesota courts with subject matter jurisdiction to exercise personal jurisdiction over a nonresident if the nonresident committed "any act in Minnesota causing injury." Minn.Stat. § 543.19, subd. 1(c) (2004); *see also Webber v. Michela,* 633 F.2d 518, 519 (8th

Cir.1980) (holding that Minnesota long-arm statute confers jurisdiction to fullest extent permitted under United States Constitution). When a nonresident is subject to personal jurisdiction based on the long-arm provisions, the "service of process ... may be made by personally serving the summons upon the defendant outside" Minnesota. Minn.Stat. § 543.19, subd. 2 (2004). Because Andersen's alleged negligence occurred in Minnesota, he remained subject to service of process after leaving the state to reside in Haiti, and Minnesota courts could exercise personal jurisdiction over him. *See Duresky v. Hanson*, 329 N.W.2d 44, 47 n. 4 (Minn.1983) (noting that plaintiff's knowledge of defendant's whereabouts does not affect analysis of whether defendant is subject to service of process).

■ Mercer argues that, because Haiti is not a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Andersen was not subject to service of process while residing in Haiti. But the convention has no bearing on Mercer's claim precisely because Haiti is not a signatory. *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361, 368–69 (listing signatories). And the convention does not provide the sole means for effecting international service; rather, it provides a centralized process for service between countries that are parties to the convention. *Id.* at 362 (limiting treaty to signatories); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988) (discussing purposes of convention); *see also* Minn. R. Civ. P. 4.04(c) (stating methods for effecting service outside United States).

Mercer failed to engage in a diligent search to serve Andersen. Minnesota courts have not specifically defined what constitutes a "diligent search" for purposes of Minn.Stat. § 541.13, but have noted that courts should consider "all relevant evidence," including when, relative to the expiration of the statute of limitations, the plaintiff commenced the search. *Duresky*, 329 N.W.2d at 49.

Mercer made several attempts to serve Andersen in Minnesota between March and May 2004. He learned on March 23, 2004, however, that Andersen was likely living in Haiti as a missionary after a sheriff attempted to serve Andersen at a former place of employment in Minnesota. Mercer presented no evidence to the district court that he attempted to follow up on this information. He instead continued to attempt service in Minnesota by serving the Minnesota Commissioner of Commerce in April 2004 and by publishing notice in a Minnesota legal newspaper in May 2004. The only indication that he attempted to contact Andersen outside Minnesota occurred after publication, when Mercer mailed a notice of publication to Andersen at a Florida address in May and June 2004. In support of his motion to dismiss, Andersen presented evidence that an internet search using Andersen's name and "Haiti" returned one result, which provided a link to Andersen's employer in Haiti. The linked website stated that Andersen was the medical director, included a picture of him, and also provided U.S. contact information for his organization. The district court did not err by concluding the statute of limitations was not tolled and by dismissing Mercer's claims against Andersen with prejudice.

### III

■ When a medical-malpractice claim requires expert testimony to establish a prima facie case, the plaintiff must satisfy the expert-review requirements set forth in Minn.Stat. § 145.682, subd. 2 (2004).

The plaintiff must first serve with the summons and complaint an affidavit by the plaintiff's attorney stating that an expert has reviewed the facts of the case and believes that the defendant deviated from the appropriate standard of care and caused injury to the plaintiff. *Id.,* subds. 2, 3(a) (2004). Within 180 days of commencing litigation, the plaintiff must serve a second affidavit that identifies the experts expected to testify about malpractice or causation and states "the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." *Id.,* subds. 2, 4(a) (2004). Answers to interrogatories will satisfy the substantive requirements of the second affidavit if they are signed by the plaintiff's attorney and each expert and served within the 180–day time period. *Id.,* subd. 4(a).

■ Failure to comply with the expert-review requirements results in mandatory dismissal with prejudice of each cause of action for which expert testimony is necessary. *Id.,* subd. 6 (2004). The district court dismissed Mercer's claim for failure to comply with the requirements of the second affidavit. We review the dismissal of a medical-malpractice claim for noncompliance with the expert-review statute for an abuse of discretion. *Broehm v. Mayo Clinic Rochester,* 690 N.W.2d 721, 725 (Minn.2005).

■ The purpose of the expert-review statute is to dismiss meritless claims at an early stage of litigation. *Id.* Section 145.682 is unambiguous and requires strict compliance with its provisions. *Id.* at 726; *Lindberg v. Health Partners,* 599 N.W.2d 572, 577–78 (Minn.1999). To comply with the expert-review statute, plaintiffs must set forth "specific details concerning their experts' expected testimony, including the applicable standard of care, the acts or omissions that plaintiffs allege violated the standard of care and an outline of the chain of causation that allegedly resulted in damage to them." *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 193 (Minn.1990). Broad or conclusory statements of causation are insufficient. *Anderson v. Rengachary,* 608 N.W.2d 843, 847 (Minn.2000); *Stroud v. Hennepin County Med. Ctr.,* 556 N.W.2d 552, 556 (Minn.1996).

■ The district court did not abuse its discretion by dismissing Mercer's claims of permanent injuries for noncompliance with section 145.682. Mercer first argues that the expert-review statute does not apply to his claims because expert testimony is not necessary to establish a prima facie case. Expert testimony is generally required in medical-malpractice cases because they involve complex scientific or technological issues. *Tousignant v. St. Louis County, Minn.,* 615 N.W.2d 53, 58 (Minn.2000). An exception to this rule applies when the alleged negligent acts are within the general knowledge or experience of laypersons. *Id.* But only rarely does section 145.682 not apply, and Mercer's claims do not fall within this exception. *See Sorenson,* 457 N.W.2d at 191 (stating that medical-malpractice cases not requiring expert testimony are rare).

■ Mercer's complaint alleges that he sustained "severe burns all over his skin and body which has resulted in permanent damage" and eye damage, requiring future treatments "to restore eye function and care of his skin." Although laypersons could understand the relationship between the burns sustained in 2000 and overexposure to ultraviolet light, Mercer alleged that he suffered permanent damage to his skin and eyes nearly four years later. Because these injuries and the alleged causation are beyond the general knowledge of persons outside the medical field, Mercer's

claims require expert testimony to establish a prima facie case and are therefore subject to the requirements of section 145.682.

■ Mercer submitted one affidavit signed by Dr. Alan Boyd, a dermatologist. Boyd's affidavit establishes that he specializes in treating skin disorders, including psoriasis, and that he believes Andersen and Ring deviated from the proper standard of care when treating Mercer. With respect to the result of these deviations, however, Boyd stated only that, in his opinion, "the departure from the standard of care was a direct cause of Robert Mercer's second degree burns." He provides no information as to the extent or permanency of the burns. The defendants do not dispute that Mercer had second-degree burns in June 2000, but assert that Mercer did not sustain permanent damage. Further, Mercer did not provide an expert affidavit addressing his claimed eye injuries. Boyd's single sentence on causation is insufficient to comply with Minn.Stat. § 145.682. *See Sorenson*, 457 N.W.2d at 193 (requiring expert affidavits to include detailed chain of causation.) Similarly, Mercer did not provide answers to interrogatories that would satisfy section 145.682. The district court therefore did not abuse its discretion by dismissing Mercer's claims of permanent injuries.

### IV

■ The parties or the court may extend the statutory expert-review deadlines for good cause. Minn.Stat. § 145.682, subd. 4(b) (2004). The statutory provision permitting an extension, however, must be read in conjunction with rule 6.02 of the Minnesota Rules of Civil Procedure. *Stern v. Dill*, 442 N.W.2d 322, 324 (Minn.1989). Rule 6.02 gives the district court discretion to extend deadlines previously set in an order. Minn. R. Civ. P.

6.02. If a previously set deadline has already passed, however, the court may only grant an extension when the failure to act resulted from excusable neglect. *Id.* 6.02(2). Excusable neglect exists when the plaintiff has a reasonable case on the merits, has a reasonable excuse for not complying with the section 145.682 time limits, acted with due diligence after learning of the time limits, and will not prejudice the defendant by extending the time limits. *Anderson*, 608 N.W.2d at 850. The district court has broad discretion to amend scheduling-order deadlines, and we review its decision for an abuse of discretion. *Broehm*, 690 N.W.2d at 727.

■ The district court did not abuse its discretion by denying Mercer's motion. Mercer has not established that any of the components of excusable neglect exists. Without an expert affidavit, whether Mercer has a reasonable case on the merits is questionable. Although the defendants conceded that he had second-degree burns in June 2000, medical records indicate that in 2000 and 2001 doctors believed his skin had healed and that they could not attribute problems with his eyes to exposure to ultraviolet light.

Mercer also has not provided a reasonable excuse for failing to satisfy the section 145.682 deadlines. The district court's scheduling order required Mercer to disclose his experts' opinions by December 1, 2004. The Boyd affidavit is dated July 2, 2002. Correctional Medical Services' attorney notified Mercer of perceived deficiencies in the affidavit in October 2004 and later moved for partial dismissal for noncompliance with section 145.682 in December 2004. Section 145.682 requires that, upon a motion for dismissal, the court cannot hold a hearing on the motion for forty-five days and the plaintiff can avoid dismissal by serving an amended affidavit to correct deficiencies in the original.

Minn.Stat. § 145.682, subd. 6(c). The district court held a hearing on the motion forty-five days after Correctional Medical Services filed its motion, and Mercer did not file an amended affidavit.

Mercer argues that his incarceration limited his ability to comply with the expert-review statute because he was subject to state control and state-provided doctors. But Mercer obtained the Boyd affidavit in 2002, indicating that he had access to his medical records for an expert to review. Further, the Department of Corrections has procedures that allow an inmate to schedule medical appointments outside the facility. Using these procedures, Mercer visited a dermatologist and an ophthalmologist in 2004. Mercer's claims that the procedures were too cumbersome to allow compliance with the deadlines are therefore unreasonable. The district court did not abuse its discretion by denying Mercer's motion to extend the scheduling-order deadline.

### DECISION

The district court had jurisdiction to consider the effect of the statute of limitations in conjunction with the motion to dismiss for insufficiency of process and correctly determined that Mercer's claims against Andersen are barred. Because Mercer's expert affidavit did not adequately address causation to satisfy the requirements of Minn.Stat. § 145.682 (2004) and Mercer did not establish excusable neglect, the court did not abuse its discretion by partially dismissing Mercer's claims and by denying his motion to extend the scheduling-order deadline.

**Affirmed.**