**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-1919**

Julie L. Pfeiffer,
Trustee on behalf of the heirs and next of kin of Dale R. Pfeiffer,
Appellant,

vs.

Allina Health System,
d/b/a Allina Hospitals & Clinics Behavioral Health Services,
and d/b/a United Hospital,
Respondent,

Paul A. Ekberg, D. O., P. A., et al.,
Defendants.

**Filed July 21, 2014**
**Reversed and remanded**
**Huspeni, Judge**[*]

Ramsey County District Court
File No. 62-CV-13-2607

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, Minnesota;

David E. Wandling, Wandling Law Group, PC, Minnetonka, Minnesota; and

Stephen P. Watters, Watters Law Office, Minnetonka, Minnesota (for appellant)

Rebecca Egge Moos, Jessica L. Klander, Bassford Remele, P.A., Minneapolis, Minnesota
(for respondent)

Patrick Stoneking, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, Minnesota; and

Lori L. Barton, Harper & Peterson, P.L.L.C., Woodbury, Minnesota (for amicus curiae
Minnesota Association for Justice)

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

Considered and decided by Ross, Presiding Judge; Bjorkman, Judge; and Huspeni, Judge.

## S Y L L A B U S

A curative expert affidavit filed by a medical-malpractice plaintiff under the safe-harbor provision of Minnesota Statute § 145.682, subd. 6(c) (2012) is not subject to the filing deadlines detailed in general rule of practice 115.03.

## O P I N I O N

**HUSPENI**, Judge

On appeal from dismissal of her medical-malpractice action, appellant argues that the district court erred in determining that Minnesota Statute § 145.682, subd. 6(c) (2012), governing the filing of affidavits of expert disclosure, is subject to the filing deadlines set forth in rule of general practice 115.03. We reverse and remand.

## FACTS

**Factual Background**

The present action arises out of a medical malpractice action brought by appellant Julie L. Pfeiffer (appellant) against respondent Allina Health System, d/b/a Allina Hospitals & Clinics Behavioral Health Services, and d/b/a United Hospital, (respondent or Allina) and Paul A. Ekberg, D. O., P. A., and Paul A. Ekberg, D.O. (Ekberg) following the death of appellant's husband, Dale Raymond Pfeiffer (decedent), on January 9, 2010.

On January 7, decedent informed his wife that he was distressed because he had made a mistake at work. Decedent decided to spend the night at his parents' house. At about 1:45 a.m. on January 8, 2010, decedent's parents awoke and found decedent

2

standing in his bedroom, fully dressed, and staring into space. He began pacing in his bedroom and indicated he was in trouble for taking files from work related to "national security." Decedent locked himself in a room in the basement and began striking his forehead against a hard surface. He attempted to stab himself in the neck with a drill bit and did stab himself in the neck several times with a mechanical pencil. Decedent's parents became alarmed when they saw blood on the floor and called 911 to request help. Sheriff's Department officers responded to the emergency call and noted that decedent appeared to have self-inflicted puncture wounds on his head. An ambulance from Allina Medical Transportation arrived at the scene and transported decedent to United Hospital for a psychological evaluation.

Upon decedent's arrival at the hospital, an emergency room physician treated and closed decedent's head wounds. Decedent went into the restroom and emerged with his wounds open and bleeding profusely. An admitting physician determined that decedent had inflicted the wounds upon himself and ordered "intensive" patient monitoring for him. "Intensive" monitoring requires hospital staff to monitor the patient at least once every fifteen minutes and to keep the bathroom door locked in order to prevent unsupervised use of the restroom. Decedent was voluntarily admitted to the hospital and placed in a mental health room pending further evaluation and psychiatric assessment.

On January 8, decedent was assigned to defendant Dr. Ekberg, a psychiatrist affiliated with the hospital.[1] Ekberg, an independent practitioner with a private practice

---

[1] Each patient admitted to the hospital is assigned to an attending physician. The patient is then admitted to a general pool of patients called the "psychiatry call group." Patients

3

within the community, participated in the hospital's call-sharing agreement to provide psychiatric services to the hospital's patients. He met with decedent and determined that he should be admitted for "stabilization, safety and further evaluation." Ekberg reduced decedent's monitoring level from "intensive monitoring" to "close monitoring," the only difference being that the patient's bathroom is unlocked. In addition, Ekberg issued an order authorizing a four-hour *BHS Therapeutic Pass* allowing decedent to leave the psychiatric unit with a family member.

On January 8, appellant went to the hospital to visit her husband and speak with the doctor. She met with Paula Boeckmann, a registered nurse in the mental health unit, who stated that Ekberg had left the hospital for the day and was not expected to return. Boeckmann did not enter appellant's information into the computer or contact the on-call doctor to meet with decedent's family. The protocol within the hospital is that if a family member wishes to speak to a doctor, a staff member pages the doctor, enters the request into a computer with the family member's name and contact information, or pages the on-call doctor to address the family's concerns.

On January 8, Boeckmann granted decedent a therapeutic four-hour day-pass pass for the vicinity of the hospital area. When appellant learned that decedent had been granted a day pass and that she would be responsible for his care, she became "concerned and scared." Boeckmann informed appellant that a day pass was appropriate for decedent and important for his well-being. Decedent accompanied his wife and his parents to the

---

admitted through the evening hours are assessed the following morning and assigned an attending psychiatrist by one of the staff members.

4

hospital cafeteria. After walking to the cafeteria, decedent and his wife sat and talked quietly before returning to the in-patient psychiatric unit.

On January 9 at approximately 1:30 p.m., Boeckmann again processed a four-hour day pass for decedent. The pass indicated that decedent would be accompanied by his spouse and did not require any medications from the pharmacy. With respect to the destination, the day-pass restricted decedent to "[s]tay around [the] hospital." The goal of the pass was to "just go out and enjoy some family time." Although the language on the pass issued by Ekberg limited decedent's movement to the hospital grounds, Boeckmann encouraged appellant to take decedent for a drive so he could get some time away from the hospital.

During the drive, decedent became agitated and demanded to be taken to his parent's home. Appellant became frightened and said she was going to drive decedent back to the hospital. At approximately 2:30 p.m., while their vehicle was stopped at a stop light on the Marion Street overpass in St. Paul, decedent ran from the vehicle and jumped over the Marion Street overpass fencing onto Interstate 94 below. He died instantly from multiple traumatic injuries. His death was ruled a suicide.

**Procedural Posture**

The procedural posture of this case is complicated and encompasses more than three years of litigation, personal and business bankruptcy filings, and numerous civil court filings.

5

On May 9, 2011, appellant filed a complaint asserting claims for negligence[2] and vicarious liability against Allina and Ekberg in court file number 62-CV-11-4890 (the 2011 lawsuit). The complaint was brought in the name of "Julie L. Pfeiffer, Trustee on behalf of the heirs and next of kin of Dale R. Pfeiffer." Although appellant's petition for appointment of trustee was filed in Ramsey County district court on April 8, 2010 and signed by a judicial officer on April 9, 2010, the judicially-signed petition was not filed with the Ramsey County district court at the time appellant commenced the 2011 lawsuit. On November 1, 2011, appellant submitted an expert affidavit of Robert I. Simon, MD, DLFAPA. Simon is a licensed psychiatrist and forensic psychiatrist. He stated that, in his medical opinion, Allina and Ekberg failed to meet the applicable standards of medical care. On February 24, 2012, Allina moved to dismiss the 2011 suit pursuant to Minn. Stat. § 145.682 and, in the alternative, moved for summary judgment arguing in part that Simon's expert affidavit was deficient. Although a hearing was originally scheduled for this dispositive motion, it was cancelled due to a bankruptcy filing and resulting stay.[3]

On January 4, 2013, appellant initiated the present lawsuit (the 2013 lawsuit) by serving a complaint in her capacity as trustee, intending to correct the potential

---

[2]Although appellant styled her cause of action as a negligence claim, the gravamen of the complaint sounds in medical malpractice and we analyze it as such. *D.A.B. v. Brown*, 570 N.W.2d 168, 171 (Minn. App. 1997).

[3]Ekberg filed for personal bankruptcy on March 12, 2012. There were various delays in the case attributable to this bankruptcy filing. On August 17, 2012, the bankruptcy court granted appellant relief from the automatic stay and allowed her to resume the civil lawsuit against Allina and Ekberg.

jurisdictional defect occasioned by the failure to file the 2010 appointment order.[4] Simultaneously, appellant served an affidavit of expert review stating that the case had been reviewed by an expert who was expected to testify that Allina deviated from the applicable standard of care resulting in injury to the decedent. Allina submitted an answer on January 17, 2013 alleging that the complaint was subject to the requirements of Minn. Stat. § 145.682 and demanding that appellant fully comply with the statute.

In March 2013, respondents moved to dismiss the 2011 lawsuit based on the fact appellant was not a trustee when she initiated the action. On April 17, 2013, appellant filed the 2013 lawsuit in district court and the parties appeared for a status conference. The district court issued an order on April 18, 2013 addressing with some specificity the relationship between the 2011 and 2013 lawsuits:

---

[4]In November 2011, appellant learned that the April 9, 2010 trustee-appointment order, as signed by the judge, had not been filed with the district court administrator. Attempts by the parties to stipulate to the delayed filing of the appointment order failed and Allina and Ekberg urged appellant to dismiss the 2011 case and re-serve the complaint. The district court later issued an order providing that "[t]he Order appointing Julie L. Pfeiffer as Trustee, signed on April 9, 2010 is valid, and the Appointment of Trustee Case shall be filed with the Court on November 30, 2011." This order, along with the April 9, 2010 order appointing trustee, was filed with the court administrator on November 30, 2011. On appeal, appellant appears to have adopted Allina's earlier position that the 2011 lawsuit was "fatally flawed" due to its jurisdictional defect. *Ortiz v. Gavenda*, 590 N.W.2d 119, 122-23 (Minn. 1999). We have serious concerns about Allina's conduct in first acquiescing to the 2011 lawsuit, only to challenge it now on appeal. However, because the district court ultimately did not address the issue of nullification we will not address it for the first time on appeal.

. . .[T]he parties shall file papers, schedule hearings, and generally conduct this litigation only in [the 2011 lawsuit].

The amended scheduling order signed on March 28, 2013, and filed on March 29, 2013, in [the 2011 lawsuit] is hereby incorporated by reference into [the 2013 lawsuit], is adopted in its entirety as the governing scheduling order in the litigation going forward, and is, for all purposes, a part of the record in that file.

Hearing dates and times that have been obtained by the parties for motions pending in [the 2011 lawsuit] shall remain on the Court's calendar, but shall be conducted as hearings in [the 2013 lawsuit], and the records of those hearings shall be, for all purposes, a part of the record in that file.

All papers that have been filed by the parties related to motions pending in [the 2011 lawsuit] are hereby incorporated by reference into [the 2013 lawsuit] and are, for all purposes, a part of the record in that file.

The April 18 order further stated that "[i]t is anticipated that [the 2013 lawsuit] will be assigned to the undersigned judge as a related case to [the 2011 lawsuit]." Appellant and Ekberg subsequently reached a settlement and the Ekberg defendants were dismissed without prejudice from the action.

On June 3, 2013, appellant submitted an amended expert affidavit of Dr. Simon and an affidavit from a new expert, Carolyn Lucas-Dreiss (Lucas-Dreiss), a clinical nurse specializing in the area of behavioral health. On June 4, 2013, a hearing was held on Allina's motions for dispositive relief. On June 5, 2013, the district court dismissed the 2011 lawsuit without prejudice. On July 31, 2013, the district court declared that appellant's affidavits of expert review were insufficient under Minn. Stat. § 145.682, subdivision 6, and dismissed the complaint in the 2013 lawsuit with prejudice in Allina's favor.

8

In its July 31, 2013 order (more fully discussed in the Analysis section of this opinion) the district court ruled that Simon's November 1, 2011 affidavit was "afflicted with noncurable problems" and failed to meet the substantive requirements of the expert review statute; that Simon's opinions regarding Ekberg's malpractice were irrelevant to appellant's claims against Allina; that the November 2011 affidavit was insufficient with respect to Boeckmann, the only other individual identified by name in the affidavit, because it failed to identify "nursing standards of care, deviations therefrom or a causal link between such deviations and [decedent's death];"[5] that Dr. Simon's November 2011 affidavit "was so riddled with fundamental problems that it did not qualify for curative measures in the form of his amended affidavit and the new affidavit of Ms. Lucas-Dreiss;" and that even if the safe-harbor provision applied, Dr. Simon's amended expert affidavit and Lucas-Dreiss's expert affidavit, filed on June 3, 2013, were untimely under Rule 115 of the Minnesota general rules of practice and lacked foundational reliability under Minnesota Rule of Evidence 702. This appeal followed.

---

[5]The legislature set out specific requirements for the affidavit of expert disclosure. Minn. Stat. § 145.682, subd. 4. To comply with this portion of the statute, the affidavit of expert disclosure must (1) disclose specific details concerning the expert's expected testimony, including the applicable standard of care, (2) identify the acts or omissions that the plaintiff alleges violated the standard of care, and (3) include an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages. *Teffeteller*, 645 N.W.2d at 428. The district court found that Simon's affidavit lacked all three elements and, with respect to Boeckmann, "[did] not explain the how and the why this terrible suicide can be traced back to [Boeckmann] deviating from a specified standard of nursing care."

**ISSUES**

I.      Did the district court err in dismissing medical-malpractice action, concluding that appellant's affidavit of expert disclosure was flawed to such a degree that appellant could not avail herself of the statutory safe-harbor provision?

II.      Did the district court err in dismissing medical-malpractice action, by first characterizing the June 3 affidavits as curative affidavits, and then subjecting them to the timeliness requirements of general rule of practice 115.03?

III.      Did the district court abuse its discretion by invading the province of the jury when it concluded that appellant's expert affidavits lacked foundational reliability under Minnesota Rule of Evidence 702?

**ANALYSIS**

**Standard of Review**

Dismissal of a medical malpractice action for failure to comply with Minn. Stat. § 145.682 is reviewed for an abuse of discretion. See *Anderson*, 608 N.W.2d at 846 ("We will reverse a district court's dismissal of a suit pursuant to Minn. Stat. § 145.682 only if the district court abused its discretion."); *Stroud v. Hennepin Cnty. Med. Ctr.*, 556 N.W.2d 552, 555 (Minn. 1996) ("A trial court's dismissal of an action for procedural irregularities will be reversed on appeal only if it is shown that the trial court abused its discretion"). Statutory construction and other questions of law, however, are subject to de novo review. *Brown–Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 215 (Minn. 2007).

The parties appear to disagree about the applicable standard of review to be applied by this court. Not surprisingly, appellant urges a de novo standard and respondent urges an abuse of discretion standard. Some of the determinations of the district court require a deferential standard of review by this court; others we review de novo. In addressing the several decisions of the district court, the applicable standard will be identified.

**I.**

**The district court erred in determining that the November 1, 2011 expert affidavit was "non-curable" to such a degree that the statutory safe-harbor provision could not apply.**

In order to establish a claim for medical malpractice, a plaintiff must show: (1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct; (2) that the defendant departed from that standard; (3) that the defendant's departure from that standard was a direct cause of the patient's injuries; and (4) damages. *Tousignant v. St. Louis Cnty.*, 615 N.W.2d 53, 59 (Minn. 2000). A medical-malpractice plaintiff must meet two procedural requirements: first, the plaintiff must serve with the complaint an affidavit of the plaintiff's attorney stating that the attorney has reviewed the case with an expert and that in the expert's opinion the defendant injured the plaintiff due to a deviation from the standard of care; second, the plaintiff must serve an affidavit identifying the experts who will testify at trial, the substance of their testimony, and a summary of the grounds for their opinions within 180 days of the commencement of the suit. Minn. Stat. § 145.682, subds. 2-4 (2012); *Anderson v. Rengachary*, 608 N.W.2d 843, 846 (Minn. 2000).

11

Addressing Simon's November 2011 affidavit, the district court dismissed as irrelevant any opinions regarding malpractice by Ekberg as supporting a claim against Allina, inasmuch as Ekberg was not an employee of Allina. As to any reference to Boeckmann in the affidavit, the district court stated: "Dr. Simon does not identify nursing standards of care, deviations therefrom or a causal link between such deviations and Dale Pfeiffer's death." The district court thereafter dismissed appellant's complaint for failure to comply with the statutory requirements. *See* Minn. Stat. § 145.682, subd. 6(c) (2012) (mandating that failure to comply with the requirements of the expert review statute results in mandatory dismissal with prejudice of the lawsuit); *Lindberg v. Health Partners*, 599 N.W.2d 572, 577-78 (Minn. 1999) (holding that Minn. Stat. § 145.682 is unambiguous and requires strict compliance with its provisions).

The expert review statute provides plaintiff with 45 days after a defendant moves for dismissal to correct alleged deficiencies in an expert disclosure affidavit. Minn. Stat. § 145.682, subd. 6(c). This safe-harbor provision was added to correct a perception that "meritorious medical malpractice claims were being dismissed where the expert disclosure affidavit was only missing some technical information that could be corrected." *Wesely v. Flor*, 806 N.W.2d 36, 40 (Minn. 2011). The applicability of the safe-harbor provision is a question of law subject to de novo review. *Brown–Wilbert, Inc.*, 732 N.W.2d at 215.

In declaring that Simon's affidavit "which appears to have been relied upon by (plaintiff's) counsel is afflicted with noncurable problems" the district court relied principally on *Brown-Wilbert, Inc.*, 732 N.W.2d at 209, an accounting-malpractice case

arising under Minn. Stat. § 544.42 (2007). In that case, the Minnesota supreme court held that a curative affidavit could be used to repair minor technical deficiencies in an otherwise-sufficient expert affidavit and concluded that "it is also undoubtedly true that an affidavit is not sufficient to satisfy the 180–day requirement if the deficiencies are so great that it provides no significant information," as "[a]ny other interpretation would render the 180–day requirement meaningless." *Id.* at 217-18.

We find that *Wesely v. Flor,* 806 N.W.2d 36 (Minn. 2011), rather than *Brown-Wilbert*, provides substantial guidance on the issue of the sufficiency of an initial expert affidavit in a medical-malpractice case. *Wesely* recognized that unlike the statute addressing accounting malpractice in *Brown-Wilbert*, under which the district court triggers the safe-harbor period when it finds the plaintiffs expert disclosure affidavit is deficient, the medical-malpractice statute does not contemplate that a trial court will make factual determinations regarding the sufficiency of the initial expert affidavit. *Id.* Indeed, the safe-harbor period under section 145.682 "is an automatic, 45-day delay before the court hears any arguments or makes any decisions regarding deficiencies in the affidavit." *Id.* at 41-42.

The *Wesely* court concluded that *Brown-Wilbert* was distinguishable on both the facts and the law and did not control in medical-malpractice cases arising under a different statutory scheme. *Id.* at 41. With respect to Minn. Stat. § 145.682, the *Wesely* court held that "[t]he statute plainly states that the safe-harbor period applies every time the defendant moves to dismiss under Minn. Stat. § 145.682, subd. 6." *Id.* at 41. Thus, the safe-harbor period is not limited to only "certain types of deficiencies." *Id.* Indeed,

13

the *Wesely* court took such an expansive view of a plaintiff's ability to cure that it concluded that Minn. Stat. § 145.682 allows a plaintiff to submit an affidavit identifying a new, previously undisclosed expert in order to cure any deficiencies in the initial affidavit of expert disclosure. *Id*. at 44. Given *Wesely*'s broad treatment of the safe-harbor provision in medical-malpractice cases, we find the district court erred in making a factual determination that appellant's first affidavit was so deficient that the safe-harbor provision could not be utilized.[6]

## II.

## A.

**The district court erred in characterizing the June 3, 2013 expert affidavits as curative affidavits.**

In its order, the district court characterized Simon and Lucas-Dreiss's June 3 affidavits as curative of Simon's affidavit submitted in the 2011 action. Appellant argues that this characterization deprived her of the full 180-day statutory period within which to file expert affidavits—initial as well as curative—in the 2013 action. We agree.

We are not insensitive to the fact that the procedural record here is exceedingly complex, and that complexity added to the burden placed upon the district court as it sorted through the arguments of the parties. As discussed above, the parties disagree, and understandably so, with regard to whether the substantive issues addressed by the court are based on the suit commenced in 2011, the suit commenced in 2013, or on a

---

[6]It is understandable that Simon's November 2011 affidavit would emphasize the conduct of Ekberg rather than that of Boeckmann, given that Ekberg was at that time still a defendant in the 2011 lawsuit.

14

coordination or combination of the two. The language of the district court's April 18, 2013 order seems to support a decision by this court that by incorporating the scheduling order, hearing dates and times, records, and all papers filed by the parties from the 2011 suit into the 2013 suit, reliance could reasonably be placed on both suits.

It is uncontested that appellant initiated the 2013 suit on January 4 of that year, and that the district court held its hearing on respondent's motion to dismiss on June 4, fewer than 180 days later. We conclude that the clear mandate of Minn. Stat. S 145.682, as well as consistent compliance with the April 18, 2013 order, required that the district court give appellant 180 days after commencement of her 2013 suit to serve affidavits identifying the experts who would testify at trial, the substance of their testimony, and a summary of the grounds for their opinions. Minn. Stat. § 145.682, subds. 2-4 (2012). By dismissing the suit before the 180-day period had run, the district court erred.

Given the tangled nature of the record here, it is possible to resolve the determinative issues by examining, as did the district court, the record of all proceedings since May 9, 2011 through June 4, 2013. Doing so, it seems to us, would be consistent with the expansive interpretation of Minn. Stat. § 145.682 evidenced in *Wesely v. Flor*, 806 N.W.2d at 41-42.

## B.

**The district court erred in determining that the June 3, 2013 expert affidavits were untimely under Minn. Stat. § 145.682.**

As discussed above, we find that appellant was entitled to the full 180-day period to file her expert affidavits. Our conclusion that this matter must be reversed and

remanded is further bolstered by the district court's mistaken application of rule 115.03 of the rules of general practice to the facts of this case[7] when, in considering the June 3, 2013 affidavits as curative, it further ruled them to be untimely.

The safe-harbor provision of Minn. Stat. S 145.682 provides that a hearing on a motion to dismiss must be "at least 45 days from the date of service of the motion" and that the curative affidavits must be served "before the hearing." Minn. Stat. § 145.682, subd. 6(c) (2012). Appellant submitted her affidavits on June 3, one day in advance of the June 4 dispositive motion hearing date. The district court held the curative affidavits were untimely. In doing so, the court theorized that Minn. Stat. § 145.682, subd. 6(c) must be read in conjunction with rule 115.03 of the rules of general practice, which requires a party responding to a dispositive motion under Minnesota rule of civil procedure 56.03 to submit its opposition memorandum and any supplementary affidavits "at least nine days prior to the hearing." Minn. R. Gen. Pract. 115.03(b) (2012). Appellant and amici curiae argue that the district court's holding conflicts with the plain language of Minn. Stat. § 145.682 and is clearly contrary to the legislative intent. We agree.

The issue in this case is one of first impression, to wit: the interplay between Minn. Stat. § 145.682, subd. 6(c), and Rule 115.03. As a matter of statutory interpretation, this question is subject to de novo review. *Wesely*, 806 N.W.2d at 39.

[7]Rule 115.03 is a general rule of practice. The general rules of practice "shall govern all the district courts of the state." Minn. Stat. § 484.33 (2012). They may be relaxed or modified "in furtherance of justice." *Id*. Enforcement of local rules, such as rule 115, is left to the discretion of the district court. *Hopkins by LaFontaine v. Empire Fire & Marine Ins. Co.*, 474 N.W.2d 209, 212 (Minn. App. 1991).

District court procedures are governed by the rules of civil procedure unless specifically excepted by the rules. Minn. R. Civ. P. 1, 81.01. The rules of civil procedure arise from the supreme court's power to regulate "the pleadings, practice, procedure, and the forms" in civil actions. Minn. Stat. § 480.051 (2012). However, these rules "shall not abridge, enlarge, or modify the substantive rights of any litigant." Minn. Stat. § 480.051 (2012). "[S]ubstantive law is that part of the law which creates, defines, and regulates rights, as opposed to 'adjective or remedial' law, which prescribes method [sic] of enforcing the rights or obtaining redress for their invasion." *Stern v. Dill*, 442 N.W.2d 322, 324 (Minn. 1989) (citing *Meagher v. Kavli*, 251 Minn. 477, 488, 88 N.W.2d 871, 879–80 (1958)); *Lombardo v. Seydow-Weber*, 529 N.W.2d 702, 704 (Minn. App. 1995) ("A statute that does not create a new cause of action or affect a defense is procedural.").

Many statutes "have both procedural and substantive aspects." *Lombardo*, 529 N.W.2d at 704 (Minn. App. 1995). The court's analysis in *Lombardo* is informative, as it involves a similar issue. In *Lombardo*, the trial court concluded that rule 41.01(b)[8] superseded section § 145.682, subd. 6 and dismissed plaintiff's medical-malpractice action for procedural irregularities. 529 N.W.2d 703. The issue on appeal was whether the legislature, by enacting section 145.682, usurped the trial court's inherent powers to control procedural matters. *Id*. at 704. In addressing the mixed procedural and

---

[8]This rule provides as follows: "Except as provided in clause (a) of this rule, an action shall not be dismissed at plaintiff's instance except upon order of the court and upon such terms and conditions as the court deems proper. Unless otherwise specified in the order, a dismissal herein is without prejudice." Minn. R. Civ. P. 41.01(b).

17

substantive nature of the medical-malpractice statute, the supreme court determined that the timing requirements of section 145.682 were procedural in nature. *Id*. at 705. *Lombardo*'s analysis was informed in part by the earlier case of *Stern v. Dill*, 442 N.W.2d 322 (Minn. 1989), in which the Minnesota supreme court considered whether the requirement that an expert-affidavit in a medical-malpractice case be filed within 180 days was procedural or substantive. *Id.* at 324. The supreme court concluded that the time limits set forth under sections 145.682, subd. 2(2) and subd. 3, relating to the initial 180-day affidavit of expert review, were procedural. *Id*. As a result, the time for serving an expert affidavit under the statute could be extended under rule 6.02, even after the time limits had expired.[9] *Id*.

There are several instances in which a court has authorized the extension of the expert-affidavit timelines. The statute itself provides that the parties may agree to extend the 180-day time limit or the court may extend the time limit "for good cause shown." Minn. Stat. § 145.682, subd. 4(b) (2012). More recently, we addressed the issue of when the parties or the court may extend the statutory expert-review deadlines for good cause. *Mercer v. Andersen*, 715 N.W.2d 114, 123 (Minn. App. 2006). The *Mercer* court reiterated that the statutory provisions of Minn. Stat. § 145.682 must be read in conjunction with the rules of civil procedure, and we held the district court did not abuse its discretion in denying plaintiff's motion to extend the scheduling-order deadline because plaintiff failed to show excusable neglect under rule 6.02. *Id.*

---

[9]Rule 6.02 of the Minnesota Rules of Civil Procedure authorizes a court to extend the statutory time limits for filing an affidavit where failure to act was the result of excusable neglect.

*Stern* is distinguishable, as it addressed the extension of the statutory deadline in Minn. Stat. § 145.682. This case involves the *curtailment* of a deadline and compels a different conclusion. *Lombardo* is again instructive. In addition to the holding in *Lombardo* that the deadlines of section 145.682 were procedural in nature, that opinion held that insofar as section 145.682 requires mandatory dismissal of malpractice claims, it "regulates substantive rights, has a jurisdictional component, and can be outcome determinative." 529 N.W.2d 705. Importantly, *Lombardo* concluded that a medical-malpractice defendant could not rely on a court rule to "circumvent a substantive provision of a statute." *Id.* We conclude that here the district court erred by applying rule 115.03 to Minn. Stat. § 145.682.

Section 145.682 is determinative with respect to the timeliness of expert affidavits. The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Minn. Stat. § 645.16 (2012). "When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect." *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 210 (Minn. 2001). "Section 145.682 is unambiguous and requires strict compliance with its provisions." *Mercer*, 715 N.W.2d at 122. Subdivision 6 mandates that a motion to dismiss hearing must be set "at least 45 days from the date of service of the motion," and the curative affidavits must be provided "before the hearing." Minn. Stat. § 145.682, subd. 6(c); *see also Wesely*, 806 N.W.2d at 41-42 ("[T]he safe-harbor period is an automatic, 45-day delay before the court hears any arguments or makes any decisions regarding deficiencies in the affidavit."). Appellant's June 3 affidavits were served before the hearing and are timely

19

under a plain reading of Minn. Stat. § 145.682, subd. 6(c). The legislature may ultimately determine to amend the statute to achieve a result consistent with that reached by the district court but we will not encroach upon the right of the legislature to enact law by "writ[ing] into a statute what the legislature did not." *Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 12 (Minn. 2005). Based upon a clear reading of the statute, we conclude that appellant's June 3 affidavits were timely and the district court erred in invoking rule 115 and holding otherwise.

## II.

**The district court abused its discretion in determining that the June 3, 2013 expert affidavits lacked foundational reliability.**

The appellate court applies an abuse-of-discretion standard of review to a district court's ruling on the admissibility of expert testimony. *Teffeteller*, 645 N.W.2d at 426-27. Evidentiary rulings concerning "materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence" are within the trial court's sound discretion. *Johnson v. Washington Cnty.*, 518 N.W.2d 594, 601 (Minn. 1994).

Here, the district court found that the June 3 affidavits were built upon the "faulty premise" that Boeckmann had a legal duty to override Ekberg's order to issue therapeutic day-passes. The district court stated that "[t]here is no sufficient foundation for this suggestion" and concluded that even if it were to "unreasonably bend the rules and allow the last-minute expert disclosures of [appellant], her affidavits still run afoul of Rule 702 of the Minnesota rules of Evidence requiring adequate foundation." The district court then selectively identified certain evidence in the record suggesting that decedent was

20

making positive progress and successfully used a day-pass on January 8, 2010, without incident. The district court further faulted the affidavits for failing to address other important facts relating to the issuance of the January 9, 2010 day-pass, including Boeckmann's encouragement to appellant that she take decedent for a drive, the lack of geographical restrictions on the day-pass, and the designation that decedent was subject to "close" monitoring.

Rule 702 governs the admissibility of expert testimony and provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Minn. R. Evid. 702. A rule 702 foundational reliability analysis requires the district court to: (1) analyze the proffered testimony in light of the purpose for which it is being offered, (2) consider the underlying reliability, consistency, and accuracy of the subject about which the expert is testifying, and (3) determine if the proffered evidence is reliable. *Doe v. Archdiocese of St. Paul & Minneapolis*, 817 N.W.2d 150, 167-68 (Minn. 2012).

The district court did not perform a Rule 702 analysis as elucidated in *Archdiocese of St. Paul & Minneapolis* with respect to Simon's and Lukas-Dreiss's June 3 expert affidavits. Again underscoring our recognition of the complex record with which the district court was working, we conclude that the district court acted as the fact-finder and based its decision on its view of the evidence. In so doing, the district court intruded upon a function customarily reserved for the fact-finder at trial. The reliability of

21

appellant's expert opinion testimony with regard to causation goes to the "relative weight" of that testimony rather than to its admissibility. *State v. Myers*, 359 N.W.2d 604, 611 (Minn. 1984). Any weaknesses in the testimony related to whether Boeckmann failed to perform the duties required of her as a nurse are relevant to the weight of appellant's evidence but not to its admissibility. *See Sentinel Mgmt. Co. v. Aetna Cas. & Sur. Co.*, 615 N.W.2d 819, 824 (Minn. 2000). Several factual allegations in the record are contested, including by way of example, what Boeckmann and other hospital staff members knew about decedent's condition, whether Boeckmann improperly issued a day-pass without contacting a physician to address the family's concerns, whether decedent's day-pass was limited to hospital grounds, and related factual inquiries. Ultimately, the weight and credibility to be given to appellant's witnesses—including Simon's and Lukas-Dreiss's testimony—should be decided by a finder-of-fact and not by the district court. *See Knuth v. Emergency Care Consultants, P.A.*, 644 N.W.2d 106, 112 (Minn. App. 2002), *review denied* (Minn. Aug. 6, 2002).

Cognizant of both the necessity to comply with the intention of the legislature as expressed in Minn. Stat. § 145.682 to prevent frivolous malpractice lawsuits and of the caution expressed in *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 192 (Minn. 1990) that the "primary objective of the law is to dispose of cases on the merits," we conclude that this case must be reversed and remanded to the district court to enable the fact-finder to resolve issues that remain.

**D E C I S I O N**

The district court erred in concluding that appellant's affidavit of expert disclosure was fatally flawed such that the statutory safe-harbor provision could not attach; that the district court erred by failing to give appellant the full 180 days within which to file expert affidavits and by mischaracterizing her June 3 affidavits as curative and subjecting them to the inapplicable timeliness requirements of general rule of practice 115.03; and the district court abused its discretion by invading the province of the jury in its foundational reliability analysis.

**Reversed and remanded.**